629 F.2d 385
 Linda D. SEAGRAVES, Individually and on behalf of all Others
Similarly Situated, Plaintiffs-Appellees, Cross-Appellants,
v.
Patricia Roberts HARRIS, Secretary of Health and Human
Services, W. Douglas Skelton, and Tracy Teal,
Defendants-Appellants, Cross-Appellees.
 No. 78-2696.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 27, 1980.
 
 1
 Robert J. Castellani, First Asst. U. S. Atty., Atlanta, Ga., Barbara Allen Babcock, Asst. Atty. Gen., Dept. of Justice, App. Div., Washington, D.C., Randolph W. Gaines, Chief of Litigation, Jack Wojciechowski, Atty., Social Security Div., Dept. of HEW, Baltimore, Md., Linda R. Birrel, Vivian Davidson Egan, Asst. Attys. Gen., Atlanta, Ga., for defendants-appellants, cross-appellees.
 
 
 2
 Myron N. Kramer, Richard K. Greenstein, Atlanta, Ga., for plaintiffs-appellees, cross-appellants.
 
 
 3
 Appeals from the United States District Court for the Northern District of Georgia.
 
 
 4
 Before RUBIN and POLITZ, Circuit Judges, and POINTER*, District Judge.
 
 POINTER, District Judge:
 
 5
 The interrelationship between an absent parent's obligation to provide child support and governmentally-funded programs to provide Aid to Families with Dependent Children (AFDC) was substantially altered by Section 101 of the Social Services Amendments of 1974, effective August 1, 1975. See Public Law 93-647, 88 Stat. 2337. A basic change was that child support payments were to be made by the absent parent not to the assisted family but rather to the assisting state, assignment by the family of those support rights having been made a condition of eligibility for AFDC assistance. The rights so assigned constitute obligations owed to the state, subject to all applicable collection processes; and the amounts collected do not reduce the AFDC benefits payable to the family but rather the cost of those benefits to the state and federal government. Collections of current obligations in excess of current AFDC benefits are paid by the state to the family, with the state being allowed upon collection of arrearages to recoup the cost of prior unreimbursed assistance payments. See generally 42 U.S.C. §§ 602, 651 et seq.
 
 
 6
 The plaintiff in this case, on behalf of herself and others similarly situated, has challenged two practices of the State of Georgia, a participant under the AFDC program, with respect to the collection and distribution of child support payments following the termination of AFDC assistance. Effective April 1, 1977, plaintiff was terminated as an AFDC recipient, final AFDC payment being for the month of March 1977. As was its regular practice in such situations, the Child Support Recovery Unit (CSRU) of the State of Georgia continued to collect support payments during the months of April, May, June, July, and August, 1977. The state remitted to the plaintiff amounts equalling those collections, with the exception that, having collected $175 from the absent parent during the month of June, it paid to the family only the monthly support obligation of $100, applying the $75 arrearage against its cost of earlier AFDC payments made to the plaintiff.
 
 
 7
 Plaintiff's complaint alleges that both the retention by Georgia of the $75 arrearage and its collections for July and August were contrary to the provisions of 42 U.S.C. § 657(c). Shortly after the suit was instituted, and apparently in response to it, amendments were adopted to the federal statute which, the plaintiff concedes, rendered Georgia's retention practice permissible prospectively, although not validating the earlier recoupment. See Public Law 95-171, approved November 12, 1977.
 
 
 8
 The changes in section 657(c), with deletions shown by lining through and with additions shown by brackets, are as follows:
 
 
 9
 "(c) Whenever a family for whom child support payments have been collected and distributed under the plan ceases to receive assistance under Part A of this title, the State may
 
 
 10
 (1) continue to collect such support payments (amounts of child support payments which represent monthly support payments) from the absent parent for a period of not to exceed three months from the month following the month in which such family ceased to receive assistance under Part A of this title, and pay all amounts so collected (, which represent monthly support payments,) to the family; and
 
 
 11
 (2) at the end of such three-month period, if the State is authorized to do so by the individual on whose behalf the collection will be made, continue to collect such support payments (amounts of child support payments which represent monthly support payments) from the absent parent and pay the net amount of any amount so collected (, which represents monthly support payments,) to the family after deducting any costs incurred in making collection from the amount of any recovery made
 
 
 12
 (, and so much of any amounts of child support so collected as are in excess of the payments required to be made in paragraph (1) shall be distributed in the manner provided by subsection (b)(3)(A) and (B) with respect to excess amounts described in subsection (b))."
 
 
 13
 42 U.S.C. § 657(c), as amended 1977.
 
 
 14
 The application by Georgia of the $75 arrearage collected in June against the unrecovered portion of earlier AFDC payments was, according to the plaintiff, contrary to the words of the federal statute as they existed prior to the November 1977 amendment, requiring the state to "pay all amounts so collected to the family." The collection of July and August support payments by Georgia was, according to the plaintiff, beyond the period authorized by the federal statute both before and after the November 1977 amendment. Plaintiff's interpretation of the authorized time period treats the month in which the last payment is made in her case, March as the "month in which such family ceased to receive assistance"; the first day of the next month in her case, April 1st as the "month following the month in which such family ceased to receive assistance"; and the next three months in her case, April, May and June as the "three months from the month following the month in which such family ceased to receive assistance."[1]
 
 
 15
 Named as defendants in the action were the Secretary of Health, Education, and Welfare now designated as the Secretary of Health and Human Services and two officials of the State of Georgia, the Commissioner of the Georgia Department of Human Resources and the Director of the Georgia CSRU. The relief requested against the Secretary of HEW was an injunction against continuation of the regulation found at 45 C.F.R. 302.51(f) which directed participating states to attempt collection, after termination of AFDC benefits, of past due support obligations for application against previously unreimbursed AFDC payments and an injunction to disapprove the contested portions of the Georgia plan. The relief sought against the state officials was an injunction against continuation of the contested portions of its plan and for refund of amounts retained from collections after termination of AFDC payments.
 
 
 16
 The case was submitted to the trial court on cross motions for summary judgment, the facts viewed by the parties as critical being without dispute. The court ruled that the collection of support payments in the fifth month August, in the plaintiff's case was not permitted under federal law. Concluding that any retroactive payments would be barred by Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and Barron v. Bellairs, 496 F.2d 1187 (5th Cir. 1974), the court declined to consider whether the retention of arrearages collected by the Georgia CSRU subsequent to termination of AFDC assistance payments comported with federal standards as they existed prior to November 12, 1977. Finally, the court declined to award attorneys' fees to counsel for the plaintiff. Appeal was then made to this court by both the plaintiff and the Secretary of HEW.
 
 JURISDICTION
 
 17
 At the outset, the question must be asked whether the trial court had jurisdiction over this cause, a matter which is to be set forth in the original pleadings. Fed.R.Civ.P. 8(a); cf. Fed.R.Civ.P. 12(h)(3). According to the allegations of the complaint, "Jurisdiction in this action is conferred over the federal defendants by 28 U.S.C. § 1331 and over the state defendants by 28 U.S.C. § 1343, providing for original jurisdiction in suits commenced under 42 U.S.C. § 1983." Satisfaction of the jurisdictional prerequisites is to be assessed separately for the federal and state defendants. See Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); Texas Acorn v. Texas Area 5 Health Systems Agency, Inc., 559 F.2d 1019 (5th Cir. 1977), on reh'g, 565 F.2d 908 (5 Cir. 1978).
 
 
 18
 On inquiry by this court during oral argument, the plaintiff acknowledged that the basis for jurisdiction asserted against the state defendants was, in view of Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), no longer tenable. As in Chapman, the federal rights of which the plaintiff was allegedly deprived were those arising under the Social Security Act and the Supremacy Clause of the Constitution. As Chapman made clear, such allegations are insufficient to confer subject matter jurisdiction under 28 U.S.C. § 1343.
 
 
 19
 Also without merit are certain alternative bases for jurisdiction suggested in this court by the plaintiff as support for her claims against the state defendants. Jurisdiction cannot be predicated on 28 U.S.C. § 1337 since the Social Security Act is not an "act regulating commerce." Ortego v. Weinberger, 516 F.2d 1005, 1010 (5th Cir. 1975). Nor can jurisdiction be based on 28 U.S.C. § 1343(3) by virtue of the anticipated defense that recovery of child support payments from the state might be barred by the Eleventh Amendment. It is well established that the question of whether a case "arises under" the United States Constitution is to be determined solely by an examination of the plaintiff's case, without recourse to the defendant's pleadings. See Tennessee v. Union and Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894); Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974).
 
 
 20
 In her supplemental brief, submitted after oral argument, plaintiff moved to amend her complaint to assert that the collection and retention of payments constituted a taking without due process of law in violation of the Fourteenth Amendment. According to the plaintiff, the amended complaint would thereby be cured of the defect in jurisdiction. Title 28, § 1653 provides that "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Federal Rule of Civil Procedure 15 permits a party to amend his pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Although the court is disturbed by plaintiff's failure to cure the jurisdictional defect earlier,[2] we recognize that dismissal for want of jurisdiction is generally not favored when an alternative basis for jurisdiction exists. Fidelity and Casualty Co. v. Reserve Insurance Co., 596 F.2d 914 (9th Cir. 1979). The facts alleged in the complaint could give rise to a colorable claim under the Fourteenth Amendment and the defendants and relief sought would be unchanged in the amended complaint. Therefore, we conclude that the defendants would not be prejudiced by the amendment and that justice requires that the amendment be allowed. Subject matter jurisdiction, therefore, becomes proper as to the state defendants; and the court may consider the plaintiff's statutory claim against these defendants under the principles of pendent jurisdiction. See Silva v. Vowell, 621 F.2d 640 (5th Cir. 1980); Curtis v. Taylor, 625 F.2d 645 (5th Cir. 1980).
 
 THE MERITS
 
 21
 The first issue presented on appeal is how long the State of Georgia may continue to collect child support payments from an absent parent after the last AFDC assistance payment. The dispute calls for an interpretation of the following language from Section 657(c)(1): "a period not to exceed three months from the month following the month in which such family ceased to received (AFDC) assistance . . . ." The phraseology is hardly a model of clarity, admitting of at least three plausible interpretations. It is unclear, for example, whether plaintiff "ceased to receive assistance" in March 1977-the month in which she received her last payment-or in April 1977-the first month in which she received no payment. It is also ambiguous whether the phrase, "from the month following the month," refers to a full month's time after that cessation of assistance or, instead, to the first day of the month following the cessation. Depending on the answers to these questions, the Act could be interpreted as permitting collection for three, four, or five months following the month in which the last assistance payment was received. The legislative history of the Act does not offer any significant guidance as to the intent of Congress. There is an oblique reference in the Senate Finance Committee report to a period of three months, but there is no indication when the period was intended to commence. See (1974) U.S.Code Cong. & Admin.News, p. 8153.
 
 
 22
 In light of the foregoing ambiguities, we adhere to the well established principle that great respect and deference is due "the interpretation given (a) statute by the officers or agency charged with its administration." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); cf. Petro-Weld, Inc. v. Luke, 619 F.2d 418 (5th Cir. 1980). This traditional deference is particularly apt where, as here, an agency is charged with implementing a comprehensive and complex administrative program and developing workable guidelines for states to follow. See Richardson v. Wright, 405 U.S. 208, 209, 92 S.Ct. 788, 789, 31 L.Ed.2d 151 (1972). The Georgia CSRU collection policy received the approval of the Secretary of HEW, reflecting the Secretary's understanding that a five month period was permitted under the statute. There is no indication that the Secretary rejected any state plan permitting collections for a similar period as being in excess of the statutory maximum. Accordingly, we hold that Georgia's policy is consistent with the statutory language, as interpreted by the Secretary.
 
 
 23
 The court now turns to the question of whether Georgia's policy of retaining amounts collected in excess of an absent parent's monthly support payments after termination of AFDC assistance-in plaintiff's case, the $75 retained from payments collected in June 1977-contravened the provisions of the Social Security Act. Plaintiff concedes that with the enactment of Public Law 95-171 on November 12, 1977, Georgia's retention policy was no longer in conflict with federal law. She nevertheless seeks distribution of the $75 collected and retained by Georgia before that date. Though the trial court did not reach the question of the validity of the policy, ruling instead that recovery was barred by the Eleventh Amendment, review of the issue is proper on appeal. See Martinez v. Mathews, 544 F.2d 1223 (5th Cir. 1976).
 
 
 24
 Plaintiff contends that Georgia's practice violated the provision of Section 657(c), which prior to the 1977 amendment read in applicable part as follows:
 
 
 25
 "Whenever a family for whom child support payments have been collected and distributed under the plan ceases to receive (AFDC) assistance . . . , the state may (1) continue to collect such support payments from the absent parent for a period not to exceed three months . . . , and pay all amounts so collected to the family."
 
 
 26
 According to the plaintiff, the requirement that payment be made to the family applies to all amounts collected by the state after termination of AFDC benefits, without regard to whether a particular collection represented current support obligations or arrearages.
 
 
 27
 A more plausible reading, and one more consistent with the overall structure of the Act following the 1974 amendments, is that this subsection was addressed to the question of collecting support payments becoming due from the absent parent after cessation of AFDC benefits. In short, in order to provide a transition period for the family to resume the responsibility for collecting support obligations from the absent parent following the termination of AFDC assistance, Congress was in subsection (c) providing that the state would be authorized to collect-but with a concomitant duty to distribute in full to the family, without even deduction for expenses of collection[3]-the support obligations becoming payable by the absent parent in the next several months. Subsection (c), with its requirement that "all amount so collected" be paid to the family, is not directed to the state's authority as assignee to collect arrearages in those support obligations that became due during the period AFDC assistance was being paid to the family. It may be noted that the authorization is not expressed as "the State may, continue to collect, for a period of not to exceed three months . . . support payments;" rather, authorization to collect is given with respect to "support payments . . . for a period of not to exceed three months ...." In the plaintiff's situation, what this means is that the $75 arrearage collected by Georgia in June and applied by it against its unrecovered AFDC costs was not required by section 657(c) to be paid to the plaintiff as a "support reduction" of AFDC for that month. Indeed, that amount had, by non-reduction of AFDC assistance, in effect been paid by Georgia to the plaintiff during the period she was receiving such assistance payments.
 
 
 28
 This interpretation comports with the structure of the AFDC program as amended in 1974 concerning child support obligations and with the understanding of the Secretary in implementing it. Under these changes, the amount of AFDC assistance during a period of eligibility would not be reduced by the amount of the child support obligations owed by an absent parent, as had previously been the case. In turn, applicants were required to assign to the state those support rights, as well as to cooperate in the establishment of such rights. Under 42 U.S.C.A. § 657(b), the state would pay over to the family amounts collected as current obligations if in excess of the current AFDC assistance amounts, as well as any collections of arrearages in excess of its unreimbursed AFDC payments; other collections would be retained by the state as reimbursement for its AFDC payments to the family. In essence, through the medium of unreduced AFDC payments, the state would be advancing to the family the obligations of the absent parent up to the level of the AFDC payment, with the state bearing the risk of non-collection from the parent. To read section 657(c) as the plaintiff here contends would also impose upon the state, without statutory direction, the additional risk of loss from late collections; it would, moreover, have the effect of paying the plaintiff the $75 twice, once when the AFDC benefit was not reduced by that amount and again when the arrearage was collected by the state.
 
 
 29
 This interpretation of section 657(c) was adopted in the Secretary's regulations promulgated in June, 1975, long before enactment of the 1977 amendment.[4] 40 Fed.Reg. 27,159 (1975) (codified in 45 C.F.R. § 302.51). Regulation § 302.51(e) applied the provisions of section 657(c) only to the collection of "current" support payments after cessation of AFDC assistance, while § 302.51(f) provided a different rule (i. e. application against unreimbursed prior assistance payments) with respect to collecting arrearages in child support obligations after cessation of AFDC assistance. Here again, to whatever extent there may have been ambiguity in the statute prior to the 1977 amendment, we conclude that deference should be given to the interpretation by the implementing agency. See Ford Motor Credit Co. v. Mulhollin, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), supra. Therefore, we hold that Georgia's retention policy was not inconsistent with the pre-1977 version of section 657(c) of the Act, and we need not decide whether the Eleventh Amendment would bar recovery of amounts improperly retained.
 
 
 30
 Plaintiff's due process claim, though sufficiently colorable to confer jurisdiction under 28 U.S.C. § 1343, see Silva v. Vowell, 621 F.2d 640 (5th Cir. 1980), is without merit. Georgia was obligated to, and did, pay the family the full amount collected by it on support obligations which became due after termination of AFDC assistance. The extra $75 collected by it in June from the absent parent, and retained by it as reimbursement for earlier AFDC payments, had in effect already been paid by Georgia to the plaintiff in the form of unreduced AFDC payments. The plaintiff has, in short, not been deprived of her property without due process of law.
 
 
 31
 The judgment of the district court is therefore REVERSED, with direction to enter judgment in favor of the defendants for the reasons set forth herein.
 
 
 
 *
 District Judge of the Northern District of Alabama, sitting by designation
 
 
 [1]
 In her complaint, the plaintiff erroneously omitted the phrase "following the month" from the statutory language, an error which made her contention of a gross allowable period of three months less intricate
 
 
 [2]
 At oral arguments, plaintiff's counsel appeared to have been aware of the court's lack of jurisdiction after Chapman and yet failed to take any steps to correct the defect. The court does not view with favor this apparently calculated decision to ignore such a defect in the pleadings unless noted by the court
 
 
 [3]
 The state may collect payments becoming due after the transition period, with the consent of the individual on whose behalf collections will be made, but in such circumstances the state may deduct its collection costs from the amount paid to the family. See 42 U.S.C.A. § 657(c)(2)
 
 
 [4]
 While later expressions are of doubtful significance in ascertaining the intent of Congress in enacting legislation, we note that the sponsor of the 1977 amendment (Senator Nunn), as well as the Senate Finance Committee, viewed the measure as being "in accordance with the intent of Congress in the previous law which was passed." 123 Cong.Rec. 17203