In re the MARRIAGE OF Ruby C.
LATHEM, Plaintiff-Respondent,

and

Bennie B. Lathem, Defendant-Appellant.

No. 12508.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 23, 1982.

Robert C. Fields, Springfield, for defendant-appellant.

Ivella McWhorter Elsey, Robert M. Sweere, Springfield, for plaintiff-respondent.

HOGAN, Judge.

Defendant Bennie B. Lathem appeals from an order of the Circuit Court of Greene County reviving a judgment ordering him to pay child support to the plaintiff. Defendant's sole point is that plaintiff's execution of the assignment statutorily required to qualify her to receive Aid to Families with Dependent Children (AFDC) under the provisions of 42 U.S.C. § 603 and § 208.040.1, RSMo 1978,[1] has devested plaintiff of all interest in the judgment. Orderly determination of the merits requires consideration of two separate but parallel actions.

The record before us indicates the parties were divorced by the Circuit Court of Greene County on September 24, 1971. The plaintiff was awarded custody of two minor children and defendant was ordered to pay plaintiff the sum of $150 per month as child support. It is not clear how much the defendant paid before he discontinued payment. At the hearing on the petition for revivor, plaintiff testified defendant paid her $3,850 from the time of the divorce to the end of 1975, when he quit paying. An affidavit executed by the plaintiff, received in evidence at the same hearing, recites that the plaintiff received a total of $3,250 from the date of the divorce to September 1980. Whatever the amount, it is fairly inferable that a sizeable arrearage has accrued since 1976.

---

1. All references to statutes and rules are to RSMo 1978 and Missouri Rules of Court (12th ed. 1981), except where otherwise specifically noted.

In 1977, plaintiff was obliged to seek public assistance. As a qualifying condition, the Division of Family Services required the plaintiff to execute the assignment of her rights of support required by § 208.040.2(2) and 42 U.S.C. § 602(a)(26)(A). This assignment was executed by the plaintiff July 11, 1977. At the end of September—or October 1978—plaintiff became ineligible to receive her entitlement. Plaintiff received the sum of $3,633.00 in benefits, although the precise amount was in dispute when this action was tried.

On February 10, 1981, a petition for support under the Uniform Reciprocal Enforcement of Support Act, now codified as Chapter 454, was filed in the Associate Circuit Court of Greene County. The petition generally conforms to the requirements of § 454.110; it was brought by the Division of Family Services as assignee and among other things prays entry of "... a judgment for child support arrearages/reimbursement of public assistance paid in the amount of $13,200.00 owed to the State of Missouri ...." The petition was certified to Oklahoma as responding state, and on April 13, the District Court within and for Tulsa County (a) found that the defendant owed a duty of support to the parties' minor children, and (b) decreed, in pertinent part, that defendant "pay the sum of $50.00 per month on an arrearage of $9,000. Said sum ... represents arrearages accruing since March of 1976. Respondent is to continue payments of $50.00 per month until the entire arrearage of $9,000 is paid in full, payments to begin on the 5th day of April, 1981." Thereafter, the Oklahoma judgment was registered in the Circuit Court of Greene County as provided by § 454.310. Date of registry is May 4, 1981.

On August 18, plaintiff in her own name petitioned the Circuit Court of Greene County for revivor of the original judgment by scire facias as provided by Rule 74.36; an order to show cause was issued the same day. Contemporaneously but separately, plaintiff moved the trial court to determine arrearages accrued under the original judgment, in effect so she might have execution

in Oklahoma. Defendant was served and timely filed a "Motion to Dismiss and Quash," averring among other things that by reason of the assignment, plaintiff had no interest in the action and was not the real party in interest as required by Rule 52.01. The court received the record made in the URESA case and heard some oral testimony bearing on the motion to determine arrearages. At the conclusion of the hearing, the court announced it would enter an order of revivor, but set the trial of the motion for a later date. An order of revivor by scire facias was entered on September 23, 1981, and notice of appeal from the order was timely filed.

■ Before the cause was submitted, plaintiff filed a motion to dismiss the appeal because no final judgment had been entered. The motion was denied. Upon submission, the motion to dismiss was earnestly renewed. Plaintiff argues that because her "Motion to Determine Arrearages" was not ruled upon by the trial court, there is no final, appealable judgment. We cannot agree. It has been held that an order of revivor is a "special order after final judgment in the cause" and is therefore appealable under the provisions of § 512.020. *Moore v. Luna,* 626 S.W.2d 417, 418[2] (Mo.App.1981), and see *City of Caruthersville v. Cantrell,* 241 S.W.2d 790, 791[2] (Mo.App.1951). Plaintiff mistakenly assumes that because her application or petition for revivor was filed contemporaneously with the other pleading, the two actions were somehow merged or consolidated. The two claims were not joined in a single pleading as permitted under Rule 55.06(a). The trial court did hear some evidence pertaining to arrearages, but actions may not be regarded as consolidated under Rule 66.01(b) unless there is an order of consolidation. *Kelly v. Greer,* 295 F.2d 18, 19[1] (3d Cir.1961). There is no suggestion in the record that the court intended to consolidate the two actions; to the contrary, the legal file shows it set a hearing date for plaintiff's motion to determine arrearages at the time it entered an order of revivor. Upon this state of the record, we

must hold that the two causes are separate, the judgment appealed from is final and the appeal is properly here.

To reiterate, defendant's sole point on this appeal is that plaintiff is not the real party in interest as required by Rule 52.01. Defendant would have it that plaintiff cannot maintain this action because she *permanently* assigned all her rights to receive support payments in order to become eligible for AFDC benefits. We are cited to *State ex rel. Reser v. Rush,* 562 S.W.2d 365 (Mo. banc 1978), and to various precedents which explain the reason for requiring actions to be brought in the name of the real party in interest, e.g., *LoBello v. Laclede Gas Co.,* 517 S.W.2d 474 (Mo.App.1974). The plaintiff argues that the assignment must be construed in light of the provisions of § 208.040.5 because the statutes in existence at the time and place a contract is made and which affect its validity, construction and enforcement form a part of the contract as if expressly incorporated therein, citing *Christy v. Petrus,* 365 Mo. 1187, 295 S.W.2d 122 (banc 1956).

■ We are inclined to agree with the plaintiff, but preliminarily, two observations should be made. Defendant's suggestion that our review of this cause is governed by Rule 73.01(c) is correct. When there is a hearing in a proceeding to revive a judgment by scire facias the hearing is now governed by the Civil Rules. Rule 74.39. Therefore this is a court-tried case. No request for findings was made, and it follows that all fact issues must be considered as having been found in accordance with the result reached.

And, while neither party has briefed or even suggested that the plaintiff's rights are governed by federal law, as implemented by federal regulations, this court takes notice of the laws of the United States and of the rules and regulations promulgated by federal agencies. *Kawin v. Chrysler Corpo-*

*ration,* 636 S.W.2d 40, 44 (Mo. banc 1982); *Wentz v. Chicago B. & Q.R. Co.,* 259 Mo. 450, 463, 168 S.W. 1166, 1170[5] (1914); *Macalco, Inc., v. Gulf Insurance Company,* 550 S.W.2d 883, 887 (Mo.App.1977); *Redman v. Western & Southern Life Ins. Co.,* 187 S.W.2d 842, 847 (Mo.App.1945). We therefore know that in 1974, the Congress enacted a comprehensive program to enforce collection of and reimbursement for AFDC payments made by the states. The federal legislation was enacted as Pub.L. 93–647 in 1974.[2] The general effect of Pub.L. 93–647 was to add Title IV–D to the Social Security Act of 1935. Title IV–D was codified as 42 U.S.C.A. § 651, et seq. Conforming amendments to Title IV–A of the Social Security Act, 42 U.S.C.A. § 601 et seq., were also enacted as part of Pub.L. 93–647. Title IV–A is the part of the Social Security Act which provides for the disbursement of AFDC benefits. One of the most important changes effected by Pub.L. 93–647 was to require that each applicant for AFDC payments assign to the state any right which had accrued to her (or him) at the time the assignment was executed. 42 U.S.C.A. § 602(a)(26)(A).

■ In 1977, the General Assembly enacted C.C.S.H.B. 601, Laws of Mo.1977, p. 393. Section 2 of the original act specifically refers to Pub.L. 93–647 and to Title 45 C.F.R. It is thus apparent from reading the session laws that § 208.040 (which provides for the disbursement of AFDC) was amended and § 207.025 (providing for the enforcement of collection) was enacted in 1977 to comply with the requirements of Pub.L. 93–647. The only reason, we may add, for noticing the interrelation of state and federal law is that neither § 207.025 nor § 208.040 fully implement the regulations prescribing the contents of a participating state's plan. This is not to say that Missouri's statutes were inadequate; 45 C.F.R. § 302.17 requires participating states to submit their statutory plan for establish-

**2.** 88 Stat. 2337. The original text of the act appears [1974] Cong.Code & Ad.News 2732–2744. The congressional act became effective in 1975. The act was amended in 1977, Pub.L. 95–171, 91 Stat. 1353, and has been amended

since, but we are concerned with the 1974 amendments which became effective August 1, 1975, and are usually referred to as the 1975 amendments.

ing and enforcing child support obligations, and Missouri's plan has been consistently approved. It is to say that our statutes are not explicit, so we may and should consider the federal regulations as interpretative. *Seagraves v. Harris,* 629 F.2d 385, 391–392[8] (5th Cir.1980). Moreover, at the risk of extending the opinion unconscionably, we should call attention to the fact that §§ 207.025 and 208.040 were amended and supplemented by the 81st General Assembly by the passage of Senate Bill 468, effective August 13, 1982. This statute does not affect this appeal, but upon the hearing of the "Motion to Determine Arrearages" the parties and the court should consult S.B. 468.

The narrow question before us is whether, at the time this action was commenced, plaintiff had any such legally protectible interest in the child support provisions of the original decree as to be a "real party in interest" as required by Rule 52.01. As a general rule, a bare legal title in the action is sufficient to maintain an action at law; the real party in interest requirement bars action by the assignor only when the whole cause or action has been assigned. *Kroeker v. State Farm Mutual Automobile Insurance Company,* 466 S.W.2d 105, 111–112[7] (Mo.App.1971).

It would serve no useful purpose to set out the assignment executed, nor to reiterate the words of the statute which requires an applicant for or recipient of AFDC benefits to execute that assignment. Section 208.040.2(2) is a literal rescript of 42 U.S.C.A. § 602(a)(26)(A) and 45 C.F.R. § 232.-11(a)(i) and (ii). In *State ex rel. Reser v. Rush,* supra, 562 S.W.2d at 368, our Supreme Court held that the assignment contemplated by § 208.040.2(2) "is designed to transfer in behalf of the state any and all existing rights to support then possessed by the applicant, and this includes all accrued rights to support, i.e., vested, existing rights to receive support payments which are past due, currently due, or which will become due in the future." The court disapproved of the division's use of the term "future rights," stating that the statute only re-

quired assignment of vested, existing rights in esse. Defendant further argues that this assignment is complete, and not partial and maintains that Rule 74.67 required that the action be maintained in the name of the assignee.

The defendant's arguments are in some measure correct, but they are misdirected. There is no doubt that in the case at hand all plaintiff's rights to receive support payments accrued to her by virtue of the original decree; when an order of support is entered at the time of dissolution, the provisions of the decree are in effect substituted for the responsible parent's common law liability of support which would otherwise exist. *Gardine v. Cottey,* 360 Mo. 681, 709–710, 230 S.W.2d 731, 749–750[26, 27], 18 A.L.R.2d 1100, 1123 (banc 1950); *Lodahl v. Papenberg,* 277 S.W.2d 548, 550–551[1, 2] (Mo.1955). Taken as a cause of action, the provisions of the decree are not assignable; for a right of action to be assignable, it must survive to the personal representative. *State ex rel. Park National Bank v. Globe Indemnity Co.,* 332 Mo. 1089, 1094, 61 S.W.2d 733, 735[2] (1933). Decrees for payment of support are incident to and part of the decree of dissolution, which abates upon the death of either party. *In re Wakefield,* 365 Mo. 415, 422, 283 S.W.2d 467, 471[2] (banc 1955). The assignment of rights at issue is a creature of statute and is sui generis.

The merits of the appeal turn on the *purpose* of the assignment. In *Seagraves v. Harris,* supra, 629 F.2d at 387, the court addressed the general scheme to which Pub.L. 93–647 looked:

"A basic change was that child support payments were to be made by the absent parent not to the assisted family but rather to the assisting state, assignment by the family of those support rights having been made a condition of eligibility for AFDC assistance. The rights so assigned constitute obligations owed to the state, subject to all applicable collection processes; and the amounts collected do not reduce the AFDC benefits payable to the family but rather the cost of those

benefits to the state and federal government. Collections of *current obligations in excess of current AFDC benefits* are paid by the state to the family, with the state being allowed upon collection of arrearages to recoup the cost of prior unreimbursed assistance payment." (Our emphasis.)

As the administration of this entitlement has progressed, the federal legislative intent to enforce collection of unreimbursed AFDC payments has become increasingly clear. 42 U.S.C.A. § 656 declares, inter alia, that the support rights assigned to the state shall constitute an obligation owed to the state by the individual responsible for providing support. That obligation, for collection purposes, is deemed collectible under all applicable State and local processes. Further, after some vacillation, the Congress provided in 1981 that a child support obligation created by the required assignment is a debt not dischargeable in bankruptcy. 42 U.S.C.A. § 656(b). Further illustrative is 42 U.S.C.A. § 654, which requires participating states to establish paternity in order to facilitate reimbursement, unless such action would be deleterious to the welfare of the child and 42 U.S.C.A. § 654(4)(B), which requires the state to secure support for the child "utilizing any reciprocal arrangements" (as, for example, URESA) adopted with other states, and concludes "that when such arrangements and other means have proven ineffective, the State may utilize the Federal courts to obtain or enforce court orders for support." For the limited purpose of enforcement of support orders, the Congress even waived governmental immunity so as to permit garnishment of federal wages. 42 U.S.C.A. § 659. In short, nothing could be more readily apparent than that the Congress intended to enforce collection of amounts due as reimbursement, even by remedies in terrorem against the United States itself and intended to make the state's right to reimbursement paramount to other claims when the amount owed has been determined. This has been recognized by the states. In Washington, for example, the state plan of compliance alternatively subrogates the state to the child support obligation. Recognizing that subrogation leaves the legal title to an action in the subrogor, the Washington Court of Appeals has held that the custodial parent may sue in her own name to recover the support obligations, *if* the state's paramount right is recognized and protected by the court's decree. *Moore v. Moore,* 20 Wash.App. 909, 583 P.2d 1249, 1252[7] (1978). In West Virginia, the Supreme Court has accomplished the same result by manhandling the statute to equate "subrogation" with "assignment." *State ex rel. State Department of Welfare v. Smith,* W.Va., 275 S.E.2d 918, 920 II (1981).

Nevertheless, the federal legislative scheme, having made the disbursing state's right to recover unreimbursed assistance payments paramount, provides also that the assignment is determinable and terminates when the state's right to reimbursement is satisfied. And, 42 U.S.C.A. § 654(11) requires the states to provide that amounts collected *shall be distributed as provided in section 657 of this title.* (Our emphasis.)

Upon its face, 42 U.S.C.A. § 657 is not very enlightening. 42 U.S.C.A. § 657(c) apparently contemplated the existence of a support order and remittance of current payments. In that situation, a state could provide for a period of transition, not to exceed 90 days, to allow the family to resume responsibility for collecting support obligations becoming due from the responsible parent after AFDC benefits were discontinued. A state might continue to collect current support payments after the 3-month period, with the assignor's consent. 42 U.S.C.A. § 657(c). Our statute, § 208.-040.5, implemented this provision only to the extent of providing that:

"... When the recipient is no longer eligible for aid the assignment shall terminate, *unless the recipient and the division agree otherwise ....*" (Our emphasis.)

But what of a situation like the case at hand, in which no current support payments were being received while the plaintiff was

receiving her entitlement? The court addressed that situation in *Seagraves,* supra, 629 F.2d at 392. The court held, in effect, that 45 C.F.R. § 302.51(f) governed situations in which there had been no collection of current payments while AFDC benefits were being furnished. 45 C.F.R. § 302.51(f) provides, in pertinent part:

"When a family ceases receiving assistance under the State's title IV–A (disbursement) plan, the assignment of support rights ... *terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment.* From this accrued amount, the IV–D (child support enforcement) agency shall attempt to collect such unpaid obligation. Under this requirement:

(1) Such collections *shall be used to reimburse any amounts of past assistance which have not been reimbursed* under paragraph (b)(4) of this section (i.e., by deduction from current support payments);

(2) Of the amount collected, the IV–D agency shall determine the Federal Government's share of the collection so the IV–A agency may reimburse the Federal Government to the extent of its participation in the financing of the assistance payments ...;

(3) Only amounts collected pursuant to this paragraph *which exceed the amount of unreimbursed past assistance shall be paid to the family.*" (Our emphasis.)

The italicized part of 45 C.F.R. § 302.51(f) has convinced at least one court that the assignment does not utterly destroy any interest the custodial parent had in the other parent's duty to pay or payments which are made. *Medsker v. Adult & Family Services Division,* 42 Or.App. 769, 601 P.2d 865, 867[2] (1979).

Because the federal scheme has been differently implemented in different jurisdictions, we must look upon foreign precedents as precedents of limited persuasion, but § 207.025.5 provides:

"Each prosecuting attorney in this state, as an official duty of such office, shall litigate or prosecute any action necessary to secure support for any person referred to such office by the division of family services, including, but not limited to, reciprocal actions under chapter 454, RSMo, actions to enforce obligations owed to the state under an assignment of support rights and actions to establish the paternity of a child for whom support is sought."

■ Viewed against the statutory scheme just sketched, the nature and purpose of the assignment and the legal effect of the actions of the plaintiff and the state become clear and make it apparent that, as against the contentions made here, plaintiff was a real party in interest and had a right to maintain this action.

Plaintiff was divorced from the defendant in September 1971. The court ordered defendant to pay the sum of $150 per month to plaintiff as child support. The decree was never modified thereafter, and whatever rights plaintiff had to receive support "accrued" to her by reason of the decree. When the plaintiff found it necessary to seek public assistance, she assigned her right to receive child support payments by command of federal and state statute. The assignment was complete, but only for the statutory purpose of allowing the state to obtain reimbursement of the sums expended as child support payments. So far as the record shows, the state was never reimbursed in any amount while assistance was being furnished, so, under the provisions of 45 C.F.R. § 302.51(f), as implemented by § 208.040.5, the assignment terminated, subject to the state's paramount right to recoup its unreimbursed expenditures, when the plaintiff became ineligible for assistance.

In order to recoup its expenditures, the state filed an action under Chapter 454 (URESA) which was certified to Oklahoma as responding state. A court in the responding state determined that arrearages in the amount of $9,000 had accrued between March 1976 and April 13, 1981. In-

stallment payments in the amount of $50 per month were ordered. The judgment was registered in Missouri. Even allowing for the fact that the responding court found arrearages in an amount considerably less than the amount averred to be due, the amount recovered by the state is considerably in excess of the amount of aid furnished to the plaintiff. The State was permitted to intervene, appeared, heard some of the testimony and the arguments, and withdrew its motion for leave to intervene. If there is a fact issue involved, it must be taken as resolved in plaintiff's favor and the state must be deemed to have secured reimbursement in the URESA action. It follows that the assignment has been terminated by operation of law.

Further, the Oklahoma judgment only purported to determine the amount of arrearage due to April 13, 1981. In the absence of a showing of emancipation, the defendant's duty to support his children continues until they reach 21 years of age. *Biermann v. Biermann,* 584 S.W.2d 106, 107[4] (Mo.App.1979). One of the children involved here was born December 26, 1961; the other was born March 10, 1963. The defendant's duty to support the elder child runs to December 26, 1982; his duty to support the younger child runs to March 10, 1984. The defendant still owes some duty of support.

We find no error materially affecting the merits of the action in any respect briefed or argued here. Accordingly, the judgment is affirmed.

MAUS, P.J., and PREWITT, J., concur.