**STATE of Wisconsin, ex rel. Lorraine SOUTHWELL, Petitioner, Respondent,**

v.

**Michael W. CHAMBERLAND, Appellant.**

No. C8–84–143.

Supreme Court of Minnesota.

Feb. 1, 1985.

Herrick S. Newman, David Newman, Jim Schmeckpeper, Fridley, for appellant.

Robert M.A. Johnson, Anoka County Atty., Janice Allen Wheat, County Atty., Anoka, for respondent.

Thomas L. Johnson, County Atty., Minneapolis, Jean M. Gerval, Margret Perry, Stillwater, amicus curiae, for Minn. County Atty's. Assoc.

Stephen C. Aldrich, Minneapolis, amicus curiae, for Family Section of Mn. State Bar Assoc.

Joanne Thatcher Swanson, Stevan Yasgur, St. Paul, Thomas L. Johnson, County Atty., Mark Chapin, Asst. County Atty., Minneapolis, amicus curiae, for Hennepin County.

SCOTT, Justice.

This is a Uniform Reciprocal Enforcement of Support Act (URESA) action, brought by Anoka County, Minnesota, on behalf of Dunn County, Wisconsin, as assignee of Lorraine Southwell, seeking $5,560 from Michael W. Chamberland as delinquent child support. The Anoka County District Court entered judgment against Chamberland for that amount. He appealed to the Minnesota Court of Appeals, 349 N.W.2d 309, on the ground that respondent Southwell's violation of the marriage dissolution decree, in keeping the location of herself and the parties' minor child from appellant, relieves him of his obligation to pay child support arrears. The court of appeals affirmed the trial court on this issue, but remanded in part with directions to enter judgment against Chamberland on behalf of the State of Wisconsin in the amount of $3,052.50 instead of the $5,560 trial court judgment. Anoka County requested and was granted discretionary review by this court of the arrearage amount. Chamberland filed a response. The Family Law Section of the Minnesota State Bar Association, the Minnesota County Attorneys Association, and the County of Hennepin submitted briefs as amici curiae.

The marriage of Lorraine (Chamberland) Southwell and Michael Chamberland was dissolved on September 20, 1976, in Anoka County Court. Southwell was awarded custody of the couple's minor child and appellant was granted a right of reason-

able visitation. Appellant was ordered to pay child support of $140 per month.

In 1978, Southwell and the child moved out of the jurisdiction without the consent of the appellant or the court. From April 16, 1981, to August 31, 1982, Southwell applied for and received $8,364.16 of public assistance in the form of Aid to Families with Dependent Children (AFDC) through Dunn County, Wisconsin. Conditional to receiving public assistance, Southwell was required to assign current and past-due child support to the State of Wisconsin up to the total amount of AFDC benefits provided her. Between April and September, 1981, $103.00 per month was expended on behalf of the child and $226.00 per month was expended for the child between October 1, 1981, and August 31, 1982. The net result was that of the $8,364.16 that Wisconsin disbursed, $3,052.50 was actual assistance to the child.

On August 2, 1983, Anoka County, on behalf of Dunn County, instituted this action against appellant for the $5,560 in delinquent child support due under the 1976 dissolution decree. This amount was not disputed; the parties stipulated that the amount of child support arrears was $5,560 under the original dissolution order. The notice of the action was appellant's first communication in five years as to the location of his child and the fact that the child and his mother had been receiving public assistance.

The following issues are raised:

(1) Does the custodial parent's removal of a child from the jurisdiction and her concealment of the child relieve the non-custodial parent of child support arrearages owed to the custodial parent?

(2) When a public assistance recipient assigns the right of child support, including accrued arrearages, to a sister state as required by federal and state law, is the sister state, as assignee, limited to the amount of public assistance it expended for the minor child alone when seeking to recover those arrearages?

1. The appellant's primary argument is that although a court cannot consider a violation of visitation as justifying cancellation of support payments, the court may consider the custodial parent's "wrongful conduct." He argues that when the custodial parent wrongfully removes the child from the jurisdiction, the non-custodial parent may be relieved of child support arrearages. It is clear that prior Minnesota case law did hold that a non-custodial parent may be relieved of the obligation to pay child support when the custodian of the child removed him from the jurisdiction. *See Anderson v. Anderson,* 207 Minn. 338, 291 N.W. 508 (1940); *Fjeld v. Fjeld,* 201 Minn. 512, 277 N.W. 203 (1937); *Eberhart v. Eberhart,* 153 Minn. 66, 189 N.W. 592 (1922). This was true even after the enactment of the Uniform Reciprocal Enforcement of Support Act (URESA). *See Illinois ex rel. Shannon v. Sterling,* 248 Minn. 266, 80 N.W.2d 13 (1956).

Nevertheless, the status of the law changed in 1978 when the Minnesota Legislature enacted, with respect to its marriage dissolution statutes, Minn.Stat. § 518.612. *See* Act of April 5, 1978, ch. 772, § 56, 1978 Minn.Laws 1086, amended by Act of May 29, 1979, ch. 259, § 29, 1979 Minn.Laws 571. That statute reads, in part:

> Nor is interference with visitation rights or taking a child from this state without permission of the court or the noncustodial parent a defense to nonpayment of support.

Minn.Stat. § 518.612 (1984).

In 1982, the legislature adopted the Revised Uniform Reciprocal Enforcement of Support Act. Act of March 18, 1982, ch. 436, 1982 Minn.Laws 391–402 (codified at Minn.Stat. §§ 518C.01–.36 (1984)). Minn. Stat. § 518C.16 reads, in part:

> The determination or enforcement of a duty of support owed to one obligee is unaffected by interference by another obligee with rights of custody or visitation granted by a court.

One basis for this concept is to prevent the child from becoming a pawn in the struggle between the parents. The child

should not be affected because one parent violates a decree. The law has given the other parent a remedy: to go into court for an amended order. *See* Minn.Stat. § 518.-612 (1984). Whether the parent removed the child wrongfully or not, the statute is clear in stating that this is no defense in a child support proceeding.

■ Subsequent case law supports this position. This court made it very clear that wrongful deprivation of visitation rights will not affect the obligation of child support. *Colorado ex rel. McDonnell v. McCutcheon,* 337 N.W.2d 645, 650 (Minn. 1983). In light of the expressed public policy set forth in sections 518.612 (1979) and 518C.16 (1982), withholding visitation is not a proper element in the resolution of what level of support is appropriate. *Id.*

In *England v. England,* 337 N.W.2d 681 (Minn.1983), this court went further in discussing denial of visitation in a URESA action. In *England,* during an existing marriage the wife removed the children from the jurisdiction. No action for separation or divorce was commenced and no order regarding child support, visitation, or custody existed. Plaintiff was receiving public welfare assistance. In a URESA action the trial court determined, and this court affirmed, that matters relating to custody or visitation cannot be raised in URESA actions. *Id.* at 684. The father was therefore ordered to pay child support to the public assistance agency. In so holding, we stated that:

> The purpose of URESA is to improve and extend enforcement of interstate duties of support. Minn.Stat. § 518C.01 (1982). Our legislature has expressed the intent that custody and visitation should not bear on enforcement of support obligations.

*Id.*

■ However sympathetic one may be to Chamberland's difficult position, the stat-utes do not appear flexible enough to accommodate his appeal. Although Southwell did not inform Chamberland of her location, and in fact may have purposely concealed her location, so that Chamberland did not know where to send the payments, this "wrongful conduct" does not take this action out of the purview of the statute nor the precedence of case law. We therefore affirm the court of appeals on this issue.

2. The trial court ordered that appellant must pay respondent the $5,560 in accrued child support arrearages. The Minnesota Court of Appeals held that respondent was entitled to reimbursement only for amounts it paid that were designated for the support of the child, and not for amounts paid for the support of Southwell. *Wisconsin ex rel. Southwell v. Chamberland,* 349 N.W.2d 309, 312 (Minn.App.1984). Katina Fine, a Dunn County investigator, had submitted an affidavit that $103 per month from April 16 to October 1, 1981, and $226 per month from October 1, 1981, until August 31, 1982, was for the child, the remainder being for the benefit of the mother. Consequently, the court of appeals remanded the case to the trial court with directions to enter judgment in the amount of $3,052.50, the total amount of assistance for the child alone.

The court of appeals based its decision on its interpretation of Minn.Stat. § 518C.02(3) (1982), which defines "duty of support." [1] The appellate court found that appellant had a "duty of support" only to his child and not to Southwell, and that this duty of support alone is enforceable under URESA. Therefore, the court concluded that appellant need only reimburse Dunn County for the amounts it paid in "support" of the child, and need not pay any amount disbursed for Southwell's benefit. The appeals court stated that "[t]his decision, however, does not affect Chamberland's

---

1. "Duty of support" means a duty of support, whether imposed or imposable by law or by order, decree or judgment of a court, whether interlocutory or final, or whether incidental to an action for divorce, separation, separate maintenance or otherwise and includes the duty to pay arrearages of support past due and unpaid.
Minn.Stat. § 518.02(3) (1982).

obligation to Southwell for the balance of the stipulated child support arrearages." *Id.*

AFDC is a cooperative federal and state public assistance program in which the federal government provides matching funds to the participating states to provide assistance to the needy dependent child and to the relative caretaker. In order to qualify for matching funds, a state must have in effect a plan approved by the Social Security Act, and must operate its child support program in conformity with that plan. 45 CFR 232.2 (1983).

■ The assignment in this case arose by operation of law. 42 U.S.C. § 602(a)(26)(A) (1982) provides that:

[A]s a condition of eligibility for aid, each applicant will be required—

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed.

*Id. See also* Minn.Stat. § 256.74, subd. 5 (1984); Wis.Stat. § 49.19(4)(h)(1)(b) (1982) (currently, the assignment arises by operation of state law rather than by execution of an assignment agreement). The assignment of support signed by Southwell gave Wisconsin a right to all support owed by Chamberland up to the total amount of AFDC expended for the family. The assignment extinguished any right Southwell had to recover assigned child support arrearages on her own behalf. The general rule is that the assignee who receives full title and interest "stands in the shoes of his assignor." *Moore v. Moore,* 20 Wash.App. 909, 912, 583 P.2d 1249, 1251 (1978). A valid assignment generally operates to vest in the assignee the same right, title, or interest that the assignor had in the thing assigned.

The appellant argues that the state can recover only the amount of assistance expended on behalf of the child; that there is no law, order, decree or judgment which imposes a duty of spousal maintenance on

appellant and no such duty is created simply because Southwell received AFDC benefits from Dunn County. He further argues that the interests of the mother and child are severable. He cites Minnesota support guidelines statutes, where the criteria do not include taking into account the financial needs of the custodial parent, Minn.Stat. § 518.551 (1982), and asserts that these guidelines apply in all child support orders. *See LeTourneau v. LeTourneau,* 350 N.W.2d 476 (Minn.App.1984).

■ The respondent replies that the maintenance of the custodial parent is an indispensable part of the support of the child, because without that parent to provide for the daily needs of a child there is no meaningful support for the child. The parent's need for assistance may arise largely because she has a dependent child to care for. Congress' own definition of aid to families with dependent children includes "money payment to meet the needs of the relative with whom any dependent child is living." 42 U.S.C. § 606(b) (1982). The maintenance of the custodial parent is an inseparable and necessary part of the support of the dependent child.

The answer to this dilemma seems to lie in the statutes. The federal statute provides that:

The support rights assigned to the State * * * shall constitute an obligation owed to such State by the individual responsible for providing such support.

\*    \*    \*    \*    \*    \*

(1) The amount of such obligation shall be—

(A) the amount specified in a *court order* which covers the assigned support rights * * *.

42 U.S.C. § 656(a)(1)(A) (1975) (emphasis added). There is nothing in the Minnesota statutes or case law which requires an interpretation contrary to the language and intent of the federal AFDC statutes.

■ We hold, therefore, that the trial court was correct in finding that the arrears for child support are $5,560, and that

the dissolution order of the Anoka County court covers the assigned support rights until it is amended or superseded. The parties have stipulated that the Anoka County dissolution judgment is the controlling order as to the amount of support in arrears. Since the assignment is clear, the State of Wisconsin steps into the shoes of the assignee and can collect the full amount up to this court order. We therefore must reverse the court of appeals and affirm the trial court's judgment on this issue.

Affirmed in part; reversed in part, with instructions to enter judgment in accordance with this opinion.