Barbara J. IVERSON,
(Callahan), Appellant,

v.

John H. SCHULTE, IV, Respondent.

No. CX–84–2038.

Court of Appeals of Minnesota.

May 14, 1985.

Scott Richardson, Richardson & Richardson, Austin, for appellant.

Bryan J. Baudler, Baudler, Baudler & Maus, Austin, Paul G. Morreim, Freeborn Co. Atty., Jeffrey B. Ring, Asst. Co. Atty., Albert Lea, for respondent.

Heard, considered and decided by PARKER, P.J., and LANSING, and HUSPENI, JJ.

## OPINION

PARKER, Presiding Judge.

Appellant Barbara Iverson and her family received AFDC from Freeborn County between August 1980 and June 1983. Freeborn County sued respondent John Schulte on Iverson's behalf to establish paternity and obtain support payments for a child born in 1966.

This is an appeal from a judgment determining paternity, ordering child support, awarding the county two years of support arrearages, and awarding Iverson child support arrearages from the date AFDC terminated. We affirm.

## FACTS

On November 29, 1966, a son, Chad, was born to Barbara J. Iverson out of wedlock. In August 1980 Barbara and Chad began receiving Aid to Families with Dependent Children (AFDC) from Freeborn County. At the time she applied for aid Iverson signed an assignment of support provision, which says in relevant part:

In consideration of my application for or receipt of public assistance benefits, and pursuant to Public Law 93–647, I

\* \* \* \* \* \*

hereby assign to the State of Minnesota, by its agent, the county welfare department

A. any rights to support I may have from any other person:

(1) in my own behalf, or

(2) in behalf of any other family member for whom I am applying for or receiving aid, and

B. which support rights have accrued at, or will accrue after, the date of this assignment.

Iverson testified that she did not read the assignment of support clause and that no one explained it to her.

Barbara and Chad received AFDC almost every month from August 1980 through March 1982. In April 1982 Barbara married Dennis Callahan. The Callahan family received AFDC payments for several months between September 1982 and June 1983, when payment ceased. The total amount of AFDC paid to that point was $9,009.

In December 1980 Freeborn County filed an action on behalf of Iverson against Schulte under Minn.Stat. § 256.87, subd. 1, to establish paternity and obtain contribution for Chad's support. After a hearing in which Schulte defaulted on the issue of paternity, the trial court ordered him to pay $125 per month child support until Chad's 18th birthday. The court also awarded Freeborn County Welfare Department $6,750 as Iverson's assignee, representing child support arrearages from December 1, 1978, through May 31, 1983. Iverson was awarded $2,000, representing child support accrued from June 1, 1983.

## ISSUES

1. Is the assignment of support clause enforceable?

2. Does the assignment of support clause entitle the county to all support owed by the natural father up to the total

amount of AFDC expended for the family or only that portion expended for the minor child alone and accrued after Iverson began receiving AFDC?

3. Did the trial court err in terminating Schulte's child support obligation when the child reached age 18 instead of the later date of his graduation from secondary school?

## DISCUSSION

### I

Iverson argues that the assignment of support clause is unenforceable because it violates principles of contract and constitutional law. She claims the assignment is the product of duress because she was financially desperate when she applied for benefits. In addition, Iverson argues she was in a totally unequal bargaining position with respect to the county.

In *State ex rel. Southwell v. Chamberland*, 361 N.W.2d 814 (Minn.1985), *rev'g*, 349 N.W.2d 309 (Minn.Ct.App.1984), the Minnesota Supreme Court considered the effect of a similar assignment of support clause. In so doing the court discussed the nature and origin of the assignment:

> AFDC is a cooperative federal and state public assistance program in which the federal government provides matching funds to the participating states to provide assistance to the needy dependent child and to the relative caretaker. In order to qualify for matching funds, a state must have in effect a plan approved by the Social Security Act, and must operate its child support program in conformity with that plan. 45 CFR 232.2 (1983).
>
> *The assignment in this case arose by operation of law.* 42 U.S.C. § 602(a)(26)(A) (1982) [*effective Aug. 1, 1975*] provides that:
>
> [A]s a condition of eligibility for aid, each applicant will be required—
>
> (A) to assign the State any rights to support from any other person such ap-

plicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed.

*Id.* at 818 (emphasis added).

■ Thus, Minnesota is required to operate its AFDC program in conformity with federal law. Since 1975 federal law has required each AFDC applicant to sign an assignment of support clause as a condition of eligibility. Therefore, the assignment in this case arose by operation of law, rather than by execution of the assignment provision, and Iverson's contract arguments are inapplicable.[1]

■ Iverson also contends that the assignment is non-binding because it discriminates against her in that other AFDC applicants who have no prior support due them receive the full grant. She offers no legal authority in support of this argument. Equal protection principles require only that those who are similarly situated be treated alike. *See Salin v. Kloempken,* 322 N.W.2d 736, 742 (Minn.1982). Iverson attempts to compare herself to others who are not similarly situated. Her argument fails because she has not shown she was treated differently from other aid recipients who have prior support due them.

■ Finally, Iverson claims the clause is not enforceable because it was not explained to her at the time she signed it. She has cited no legal authority which holds that the county is under a duty to give persons subject to state and federal statutes and regulations direct notice of their content and application, nor do we find such a duty. *See Medsker v. Adult and Family Services Division, Department of Human Resources,* 42 Or.App. 769, 601 P.2d 865 (1979).

We hold the assignment of support clause is enforceable because it arose by operation of law and does not violate Iverson's constitutional rights.

---

1. Since 1983 the assignment also arises by operation of state law. *See* 1983 Minn. Laws ch. 308, § 1 (codified at Minn.Stat. § 256.74, subd. 5 (1984)).

## II

Iverson contends that the assignment of support clause does not entitle the county to all support owed by Schulte up to the total amount of AFDC expended for the family but only the amount expended for Chad alone.

In *State ex rel. Southwell v. Chamberland*, 361 N.W.2d 814 (Minn.1985), the Minnesota Supreme Court said:

> The assignment of support signed by [the AFDC applicant] gave Wisconsin a right to *all support owed by [the father] up to the total amount of AFDC expended for the family.* The assignment extinguished any right [the applicant] had to recover assigned child support arrearages on her own behalf. The general rule is that the assignee who receives full title and interest "stands in the shoes of his assignor." * * * A valid assignment generally operates to vest in the assignee the same right, title, or interest that the assignor had in the thing assigned.

361 N.W.2d at 818 (emphasis added).

Applying the same rule in this case, the assignment of support clause signed by Iverson gave Freeborn County a right to all support owed by Schulte up to the total amount of AFDC paid for the family. The same principle also disposes of Iverson's claim that she and not Freeborn County should have been awarded child support that accrued before she began receiving AFDC.

## III

The trial court ordered Schulte to pay support until Chad's 18th birthday on November 29, 1984. Iverson claims the trial court erred by not ordering child support paid until Chad graduates from high school in May 1985.

Minn.Stat. § 518.64, subd. 4, provides in relevant part:

> Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child * * *.

Under the law in effect at the time the lawsuit was commenced (December 1980), "child" was defined as "an individual under 18 years of age or an individual who, by reason of his physical or mental condition, is unable to support himself." Minn.Stat. § 518.54, subd. 2 (1980). Iverson has presented no evidence that Chad is unable to support himself because of a physical or mental deficiency. Therefore, Schulte's obligation for support ended when Chad became 18. *See also Kleinhuizen v. Kleinhuizen,* 354 N.W.2d 588, 590 (Minn.Ct. App.1984).

In 1983 the statutory definition of "child" was changed to include "an individual under age 20 who is still attending secondary school." 1983 Minn. Laws ch. 144, § 1 (amending Minn.Stat. § 518.54, subd. 2 (1982)). Iverson claims this amendment applies to and governs this case. The amendment expressly states, however, that it became effective as of May 18, 1983, and "applies to all awards of child support made in actions for dissolution or legal separation *commenced on or after that date."* 1983 Minn. Laws ch. 144, § 2 (emphasis added). *See also Kleinhuizen* at 590. Because this case was commenced in December 1980, the 1983 amendment does not apply.

## DECISION

The assignment of support clause arose by operation of law and is enforceable. The assignment applies to support rights existing prior to Iverson's receipt of AFDC benefits and entitles the county to all support owed by Schulte up to the total amount of AFDC expended for the family. The trial court's order that support payments terminate on the child's 18th birthday was consistent with the law applicable to this case.

Affirmed.