633 So.2d 430 (1993)
MISSISSIPPI STATE DEPARTMENT OF HUMAN SERVICES
v.
Timothy A. BARNETT.
No. 92-CA-0751.
Supreme Court of Mississippi.
December 23, 1993.
Rehearing Denied March 17, 1994.
*431 M. Earl Scales, Jackson, for appellant.
William Larry Latham, Hrmine M. Welch, Jackson, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
The Mississippi Department of Human Services, hereinafter "DHS" or "the Department," appeals from a final judgment entered on June 9, 1992, by the Chancery Court of Bolivar County, Mississippi, granting DHS' Motion of Intervention while contemporaneously denying as moot its Motion For Blood Tests and also, in the wake of plaintiffs' Motion Ore Tenus for a final judgment of dismissal, dismissing the matter with prejudice upon a finding of a negotiated settlement between the original parties to the action.
The original parties to the action were the plaintiffs, Betty Jean Banks and her three (3) minor children, and the defendant, Timothy A. Barnett, the putative father of Banks' children. Specifically, the chancellor dismissed the action with prejudice as to all rights of the plaintiffs (Ms. Banks and the minor children) and intervenor (the DHS) "[w]ith the exception of the Department's right with respect to the amount of any unpaid support obligation that accrued under lawful assignment to the extent of the amount of past assistance paid to Plaintiff by the Department which has not been reimbursed to the Department."
The underlying cause of action  that of paternity  was settled through the means of the doubtful claim statute, Miss. Code Ann. § 93-13-59. A negotiated settlement was reached by Ms. Banks and Mr. Barnett. The DHS was not a party to the guardianship procedure in which all claims between the original parties were decided, nor was it a party to the negotiations that preceded settlement.
The DHS contends on appeal (1) the chancellor erred when he granted the Department's motion of intervention while, at the same time and in the same instrument, dismissing the paternity and child support action with prejudice upon a finding of settlement between Ms. Banks and Barnett, and (2) the chancellor erred when he granted to Ms. Banks, the duly appointed guardian of the minor children and a recipient of Aid to Families with Dependent Children (AFDC), the authority to settle the unliquidated claims of the minor children against Barnett, the putative father, without the knowledge of, participation in, or approval of, the Department. It is the position of the Department that it had a vital interest in the outcome of this cause and was denied a meaningful opportunity to effectively intervene. We agree.
Two (2) separate proceedings, both inextricably interwoven, were initiated in the lower courts either by, or on behalf of, Betty Jean Banks. They were:
1. LaShondra D. Banks, LaToya D. Banks and LaBroderick D. Banks, Minors, By and Through Their Mother and Next Friend, Betty Jean Banks v. Timothy A. Barnett, Cause Number 9420 in the *432 Chancery Court of Bolivar County, Mississippi (hereinafter referred to as "the paternity case"); and
2. In the Matter of the Estate of LaShondra D. Banks, LaToya D. Banks, and LaBroderick D. Banks, Minors, By and Through Their Mother and Next Friend, Betty Jean Banks, Cause Number 9572 in the Chancery Court of Bolivar County, Mississippi (hereinafter referred to as "the guardianship case").
The chancellor found as a fact that
1. Betty Jean Banks is a recipient of Aid for Dependent Children on behalf of the aforesaid minor children and by virtue of Miss. Code Ann. § 43-19-35 (1972) has made an assignment to the State Department of Human Services for the period of time assistance is being paid by said department;
2. The Mississippi Department of Human Services is a party in interest in this cause and should be allowed to intervene so this Court can consider their interest fully;
3. Betty Jean Banks has renounced her right to any further Aid for Dependent Children on behalf of the aforesaid minors in open Court at the time of her appearance herein on June 4, 1992;
....
9. The Department of Human Services' interest in this case was fully considered by this Court as an Intervenor before this Court proceeded to appoint Ms. Banks as Guardian or consider and approve the settlement on behalf of the minors;
The dismissal of the action, with prejudice, upon a finding by the chancellor of settlement between the original parties effectively impaired or impeded, if not precluded, the intervenor, i.e., the DHS, from fully asserting its claim and protecting its interest. The Department was denied a meaningful opportunity to intervene in the lawsuit and settlement process and to assert, adjudicate, and enforce its rights under its statutory assignment. The DHS should have been made a party to the action. Because it was not, we reverse, render, and remand.

FACTS
Betty Jean Banks, a single woman, is the natural mother of three (3) children, each born out of wedlock: LaShondra D. Banks, born January 19, 1985; LaToya D. Banks, born February 7, 1987, and LaBroderick D. Banks, born January 24, 1988. Ms. Banks, single and unmarried when the minors were born, was the recipient of Aid to Families with Dependent Children (AFDC) in the amount of $144.00 per month, food stamps in the amount of $352.00 per month, as well as Medicaid benefits. Ms. Banks first began receiving AFDC in 1985. She was a recipient until she renounced her rights to aid on the day of court, June 4, 1992.
Timothy A. Barnett, a former resident of Gunnison, Mississippi, is a professional football player for the Kansas City Chiefs organization. He had recently been drafted by the Chiefs and was attending training camp when he became the target of a paternity suit filed by Banks. At the time of the trial, Barnett was married and residing with his wife in Overland Park, Kansas.
The Mississippi Department of Human Services, formerly the Mississippi Department of Public Welfare, is a State agency that sought to intervene in the present action through its Division of Child Support Enforcement.
On July 24, 1991, Banks, by and through her private attorney, Thomas Morris, Sr., initiated, as next friend and mother of the minor children, a Complaint in the nature of a paternity suit which was filed in Bolivar County, Mississippi, on behalf of the children. Banks named Barnett as the defendant and sought to establish paternity and to obtain an award of child support.
By virtue of a state statute, Miss. Code Ann. (1972) § 43-19-35 (Supp. 1992) Banks, as a recipient of public aid, had assigned to the Department "[a]ny and all rights and interests in any cause of action past, present, or future, that [the] recipient or the children may have against any parent failing to provide for the support and maintenance of said minor child or children for the period of time that assistance is being paid by said department." The Complaint, which was filed over *433 three (3) years after the birth of Banks' last child, alleges in paragraph V. that "[d]efendant was recently drafted into the National Football League by the Kansas City Chiefs and is more than able to provide for the maintenance and support of his minor children."
On October 3, 1991, the chancellor, pursuant to Miss. Code Ann. (1972) § 93-9-21 (Supp. 1992), entered an Order Directing Blood Test. Although the chancellor ordered all parties to submit to genetic blood testing, no tests were ever performed, and Banks did not seek to enforce the order. Rather, Banks and Barnett continued to negotiate for a settlement without litigation to determine paternity.
On October 9, 1991, Barnett filed his Answer affirmatively asserting "[t]hat he is not the father of LaShondra D. Banks, LaToya D. Banks and LaBroderick D. Banks; and, as to the issue of paternity, [he] demands trial by jury."
The Department claims it was not aware of the ongoing litigation between Banks and Barnett until the first week of June, 1992. On June 2nd, nearly a year after Banks filed her complaint, the Department, by and through its IV-D Division of Child Support Enforcement, filed in the paternity case its Motion of Intervention and for Blood Tests setting forth its statutory authority and interest in the action and requesting an additional court order for blood testing. Neither Ms. Banks nor any of her children ever appeared for blood testing, and her lawyer never made a demand for compliance with the chancellor's order directing blood tests.
Prior to the Department's motion of intervention, the usual discovery was initiated, and appropriate responses were filed. This eventually led to a negotiated settlement of almost all issues on June 4, 1992, two (2) days after the Department moved to intervene. On that day the chancellor, after Ms. Banks had renounced her entitlement to AFDC, entered a decree in the guardianship case approving the settlement.
To facilitate the settlement, an ancillary proceeding, the guardianship case, had been initiated in the same Court for the purpose of establishing the mother as the lawful guardian of the minor children. On June 4, 1992, Ms. Banks, by virtue of the authority found in Miss. Code Ann. § 93-13-59 filed in Cause Number 9572, the guardianship case, a "Petition for Appointment of General Guardian" and a "Petition for Authority to Settle Unliquidated Claim of Minor." Attached to the latter pleading as Exhibit A was a "Schedule of Compensation" and an "Absolute Release With Covenants." Under the terms of the release with covenants Ms. Banks, as her children's legal guardian, and Mr. Barnett, as the putative father and defendant below, agreed to the acceptance of a financial arrangement in return for a release of further proceedings and a forbearance of future litigation against Barnett.
The Chancery Court of Bolivar County made a fact determination that Ms. Banks was a fit and proper person to serve as guardian and issued a decree appointing her as general guardian. The chancellor also issued a decree authorizing Ms. Banks, in her capacity as guardian and acting through private counsel, to settle the unliquidated claims of the minor children. The decree also approved the settlement in the wake of a finding that "the consideration [was] adequate and sufficient." The guardianship proceedings on June 4th were conducted unilaterally without intervention by the DHS.
A release was subsequently entered into with consideration paid jointly to Ms. Banks, as guardian, and to her attorney, for deposit in the guardianship fiduciary account, subject to the rights of the Department, if any, with respect to the amount of any unpaid support obligation that had accrued under lawful assignment to the Department by Ms. Banks.
On June 9, 1992, the chancellor entered a Final Judgment in Cause Number 9420, the paternity case, after the cause came on for hearing "[o]n the Motion of Intervention filed herein by the Mississippi Department of Human Services and on the Motion Ore Tenus of the Plaintiff for a Final Judgment of Dismissal."
The chancellor set forth a detailed finding of fact which stated, inter alia, that
13. This action should be dismissed with prejudice as to all of the rights of Plaintiff *434 and Intervenor; except that Intervenor's rights with respect to the amount of the unpaid support obligation accrued under the assignment are reserved, but only to the extent of the amount of past assistance paid to plaintiff by the Department of Human Services which has not been reimbursed to the Department of Human Services.
The chancellor rendered a Final Judgment in the following language:
IT IS ACCORDINGLY ORDERED AS FOLLOWS:
1. The Mississippi Department of Human Services ("Department") is allowed to intervene in this action;
2. The Department's Motion for Blood Test is moot by prior like Order of this Court under date of October 3, 1991;
3. This action is dismissed with prejudice as to the rights of Plaintiff, the minors and the Department with the exception of the Department's right with respect to the amount of any unpaid support obligation that accrued under lawful assignment to the extent of the amount of past assistance paid to Plaintiff by the Department which has not been reimbursed to the Department.

DISCUSSION
In appeals from chancery court, the Supreme Court's scope of review is quite limited.
Findings of fact made by a chancellor will not be disturbed by the Supreme Court unless they are either manifestly wrong, clearly erroneous, or unsupported by substantial credible evidence. See Smith v. Dorsey, 599 So.2d 529, 533 (Miss. 1992); Smith By and Through Young v. Estate of King, 579 So.2d 1250, 1251 (Miss. 1991); Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1313 (Miss. 1989); Williams v. Evans, 547 So.2d 54, 58 (Miss. 1989); Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983) or unless an erroneous legal standard was applied to the facts found by the chancellor. Bell v. Parker, 563 So.2d 594, 596-97 (Miss. 1990).
On the other hand, "[w]hen the [chancellor's] determination is one of law rather than fact, `the familiar manifest error/substantial evidence rule does not prevent this Court from conducting a de novo review of the chancellor's finding.'" Stevenson v. Stevenson, 579 So.2d 550, 552-53 (Miss. 1991) quoting Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990).
This Court will not hesitate to reverse a chancellor when his findings are manifestly wrong or when he has applied an erroneous legal standard. Tilley v. Tilley, 610 So.2d 348, 351 (Miss. 1992); Faries v. Faries, 607 So.2d 1204, 1208 (Miss. 1992).
Miss. Code Ann. § 93-9-9 (Supp. 1992) provides, inter alia, that
[p]aternity may be determined upon the petition of the mother, the child, or any public authority chargeable by law with the support of the child; . ..
This section, combined with Miss. Code Ann. § 43-19-31 and § 43-19-35, grants to the Department of Human Services the right to petition the chancery court to have the paternity of a child born out of wedlock determined. "The right [of the DHS] is separate from and independent of the right of the mother." Minor v. State Department of Public Welfare, 486 So.2d 1253, 1255 (Miss. 1986).
Miss. Code Ann. § 43-19-31 authorizes the State Department of Human Services to establish a Child Support Unit, one of the purposes of which is
(b) To secure and collect support by any method authorized under state law and establish paternity for any child or children receiving aid from the department,
...
Miss. Code Ann. § 43-19-35, which assigns to the DHS certain rights of welfare recipient mothers, reads, in part, as follows:
(1) By accepting public assistance for and on behalf of a child or children, the recipient shall be deemed to have made an assignment to the State Department of Human Services of any and all rights and interests in any cause of action, past present or future, that said recipient or *435 the children may have against any parent failing to provide for the support and maintenance of said minor child or children for the period of time that assistance is being paid by said department; said department shall be subrogated to any and all rights, title and interest the recipient or the children may have against any and all property belonging to the absent or nonsupporting parent in the enforcement of any claim for child or spousal support, whether liquidated through court order or not. The recipient shall also be deemed, without the necessity of signing any document, to have appointed the State Department of Human Services to act in his or her, as well as the children's name, place, and stead to perform the specific act of instituting suit to establish paternity or secure support, ... [emphasis supplied]
We have held that by virtue of its providing public assistance for the benefit of minor children, the DHS has become subrogated to the recipient's rights against the putative father. Hull v. State Department of Public Welfare, 515 So.2d 1205, 1207 (Miss. 1987).
This Court has also held that reimbursement or indemnification for welfare expenditures for children receiving aid to dependent children is permitted under § 43-19-35. Hailey v. Holden, 457 So.2d 947, 950 (Miss. 1984). Our statutes are intended "to protect the state's interest when it appears likely that the child is or will become a public charge ..." as well as to "protect the public purse." Ivy v. State Department of Public Welfare, 449 So.2d 779, 781 (Miss. 1984).
Miss. Code Ann. § 93-13-59 (1972), which empowers guardians to settle doubtful claims due their wards, reads as follows:
Guardians may be empowered by the court, or chancellor in vacation, to sell or compromise claims due their wards, on the same proceedings and under the same circumstances prescribed in reference to the sale or compromise by an executor or administrator of claims belonging to the estate of a deceased person. And the guardian in such case is authorized to receive in satisfaction of claims, when to the interest of the ward, property, real or personal, the title to be taken in the name of the ward.
Claims authorized in the Mississippi Uniform Law on Paternity may be settled pursuant to § 93-13-59. Atwood v. Hicks by Hicks, 538 So.2d 404 (Miss. 1989).
Barnett argues that Rule 54(b), Miss. R.Civ.P., operates to give the chancellor's "Final Judgment" interlocutory effect and that the DHS' appeal is either premature or untimely.
We agree with the DHS that the Final Judgment is more than interlocutory in nature. It is a final, appealable judgment, comprehensive in scope, replete with extensive findings of fact and conclusions of law. It is a final judgment of dismissal of the action with prejudice against Ms. Banks, the minor children and the Department.
The DHS provided AFDC and other public assistance to Ms. Banks. Accordingly, Banks had made an assignment of her rights to the Department pursuant to statute. The Department had rights and interests relating to the subject of the action, and the chancellor so found as a fact. Nevertheless, the DHS was not initially made a party to the paternity case. See Rule 19(a)(2), Miss. R.Civ.P., which provides that a party shall be joined if "he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."
The practical matter of the payment of funds to the DHS through any settlement procedure has become impaired or impeded inasmuch as the "Absolute Release With Covenants" made no provision for the repayment to the Department of funds expended for the children's welfare. The method of collecting a pecuniary award is, at best, illusory.
Upon learning that Ms. Banks was a recipient of AFDC and other public assistance through the Mississippi Department of Human Services, the trial court should have *436 ordered that the Department be made a party to the paternity action. Since the Court did not, the Department, by virtue of Rule 24(a)(2), Miss.R.Civ.P. (1982), had a duty to intervene in the matter. The Department's intervention in the action was one of right since it claimed an interest relating to the subject matter of the action and was so situated that the disposition of the action could, as a practical matter, impair or impede its ability to protect that interest, unless its interest was adequately represented by existing parties.
Although the chancellor granted the Department's motion to intervene, it did so in its Final Judgment entered on June 9, 1992, after the parties to the original action had already negotiated and executed the settlement agreement.
The DHS filed its motion for intervention in the paternity case on June 2, 1992. On June 4, 1992, the chancellor, in the guardianship case, issued Letters of Guardianship and authorized Ms. Banks, as court-appointed guardian of her three (3) minor children, to settle the unliquidated claims of the children. Since the lower court did not grant the Department's motion to intervene until June 9, 1992, the belated granting of the Department's motion impaired or impeded, if not precluded, the DHS from participating in the settlement process and in protecting its interest in the case, all to the detriment of the Department.
We note that the chancellor's Final Judgment approving the settlement states that "[t]he Department of Human Services' interest in this case was fully considered by this Court as an Intervenor before this Court proceeded to appoint Ms. Banks as Guardian or consider and approve the settlement on behalf of the minors." Nevertheless, the Department was not granted its status as intervenor and was not made a party to the action until June 9th when the final judgment was entered dismissing the action with prejudice. This, in our opinion, was too little too late.
Barnett relies upon Atwood v. Hicks by Hicks, 538 So.2d 404 (Miss. 1989), where we held that a claim made on behalf of a minor child against the putative father for paternity and for maintenance and support may, with court approval, be finally settled under the "doubtful claims" statute.
Atwood, although containing viable law, does not completely control this case because Atwood involved private litigants, and no assignment of rights and interests had been generated by the acceptance on the part of the custodial parent of public assistance. Stated differently, the Department of Human Services was not implicated as an interested party.
Had the Department been allowed to file responsive pleadings and join issue, it could have raised several objections and entered its plea for specific affirmative relief, particularly to the point concerning the DHS' interest in the case. By its granting the Department's motion to intervene contemporaneously with the dismissal of the action, the trial court pretermitted the Department's right to even raise any relevant issues, let alone specifically address them.
Mississippi's assignment statute, § 43-19-35, includes "any and all rights and interests in any cause of action, past, present or future, ..." (emphasis supplied) Upon Ms. Banks' acceptance of public assistance and her assignment pursuant to Section 43-19-35, the Department took an assignment of her interest, and of the minor children's interest, in "any cause of action," after which the Department became vested with the right to proceed against Barnett to establish paternity and seek an order awarding child support. Ms. Banks could not then unilaterally proceed, without the Department's participation, to ignore the Department's interest in the negotiation and settlement of her claim against Barnett.
We recognize that the chancellor, in his wisdom, attempted to provide a source of immediate relief for the minor children who had been relying on public assistance for their support. In so doing, however, he did not have the benefit of the Department's arguments and positions as to relevant issues. Having dismissed the action prior to allowing the Department to articulate and advance its position, the chancellor denied the Department a meaningful opportunity to enforce its rights in intervention.

*437 CONCLUSION

The settlement between Ms. Banks and Barnett is a nullity because the DHS had no meaningful opportunity to intervene in the lawsuit and settlement.
We agree with the DHS that the chancellor was manifestly wrong in granting the Department's motion for intervention while at the same time dismissing the action with prejudice. This procedure effectively negated any meaningful participation by the Department in the paternity case which had been settled by the original parties to the action via the guardianship case before the Department was granted status as an intervenor. As a practical matter, this was tantamount to overruling the Department's motion for intervention. There is no way the chancellor could consider, fully, fairly, and finally, the interest of the DHS without granting it a meaningful opportunity to intervene and protect its rights and interests generated by statutory assignment.
Because the chancellor's Final Judgment is appealable, and because the DHS was not made a party to the paternity and child support action and the negotiated settlement which flowed in its wake, this case is reversed and remanded for proceedings consistent with the opinion of this Court.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THE OPINION OF THIS COURT.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
BANKS, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and McRAE, J.
BANKS, Justice, dissenting.
Because I believe that this court lacks jurisdiction I am compelled to dissent.

I.
I agree with Barnett that, pursuant to Rule 54(b) Miss.R.Civ.P., the chancellor's "final judgment" was interlocutory in nature because it did not resolve all of the claims before the court. The Department of Human Services did not seek certification pursuant to Rule 54(b). Without Rule 54(b) certification, this Court does not have jurisdiction to entertain DHS' appeal. May v. V.F.W. Post No. 2539, 577 So.2d 372, 374 (Miss. 1991); Bradley et al. v. Holmes, 242 Miss. 247, 134 So.2d 494 (1961).
Rule 54(b) provides:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is not just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. (Emphasis added.)
The instant case involved multiple parties, as well as, multiple issues, including the Department of Human Services' (DHS) motion to intervene in the settlement, DHS's motion for a blood test and DHS's right to reimbursement for past assistance provided to Betty Jean Banks. With respect to those issues, the chancellor rendered a "final judgment" that provided:
1. The Mississippi Department of Human Services ("Department") is allowed to intervene in this action;
2. The Department's Motion for Blood Test is moot by prior like Order of this Court Under date of October 3, 1991; and
3. This action is dismissed with prejudice as to the rights of Plaintiff, the minors and the Department with the exception of the Department's right with respect to the amount of any unpaid support obligation that accrued under lawful assignment *438 to the extent of the amount of past assistance paid to Plaintiff by the Department which has not been reimbursed to the Department. (Emphasis supplied.)
Clearly, even though the chancellor's order was designated as a "final judgment", it did not adjudicate all of the claims or rights of the parties. This "final judgment" only disposed of two issues. First, the chancellor recognized that DHS had an interest in the litigation and allowed the agency to intervene to protect its interest. Second, the court found that since Timothy Barnett had agreed to support his three purported children, DHS's motion for a blood test was moot. While the chancellor recognized that DHS was entitled to reimbursement for its past support of the children, it did not determine how much money DHS was due or who owed DHS the money.
Under these circumstances, it can hardly be said that the trial judge's "final judgment" was final, because it was not a final decision on the whole controversy. Rabekoff v. Lazere & Co., Inc., 323 F.2d 865 (2d Cir.1968). Further steps had to be taken to determine how much money DHS was owed and to assess liability for that amount. Teller Environmental Systems, Inc. v. United States, 802 F.2d 1385, 1389-90 (Fed. Cir.1986).
Reasoning that the order is interlocutory is in line with the Comment to Rule 54(b), as well as with case law.
The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.
The rule does not require that a judgment be entered when the court disposes of one or more claims or terminates that action as to one or more parties. Rather, it gives the court discretion to enter a final judgment in these circumstances and it provides much needed certainty in determining when a final and appealable judgment has been entered. If the court chooses to enter such a final order, it must do so in a definite, unmistakable manner.

Absent a certification under Rule 54(b), any order in a multiple party or multiple claim action, even if it appears to adjudicate a separable portion of the controversy, is interlocutory.
If the court decides that an order that does not dispose of all the claims of the parties and that is not appealable under any other statute or rule would be given the status of a final judgment, Rule 54(b) requires it to take two separate steps before an appeal can be perfected. The court must make "an express determination that there is no just reason for delay" and it must make "an express direction for the entry of judgment." (emphasis added).
In addressing its jurisdiction to hear an appeal in May v. V.F.W. Post No. 2539, 577 So.2d 372, 374 (Miss. 1991), this Court recognized that a lower court may direct the entry of a final judgment pursuant to Rule 54(b) if it determines that there is no just reason for delay and so state. "Moreover, [w]hile we will not require a trial court to set forth specific reasons and findings prefatory to entering a Rule 54(b) judgment, we will look with disfavor on such judgment. Indeed, unless the reason the judgment was granted is clear the record, we will not search for a justification, but will vacate the appeal." Citing, Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897, 901 (Miss. 1991).
In light of May this Court should vacate DHS' appeal. There is nothing in the record to show that DHS requested a certification under Rule 54(b) which would have cleared the way for the agency to properly perfect an appeal from the judgment.

II.
While the issue of DHS' right to establish paternity is not properly before this Court, it is clear that DHS has an interest in this action up to the amount of funds expended on the Banks' children.
There is no question that Banks assigned her rights against Barnett, the purported nonsupporting parent, to DHS when she began receiving welfare benefits in 1985. See Miss. Code Ann. section 43-19-35 (1976). There is a question, however, whether DHS has an interest in the action beyond reimbursement for past support expended on the *439 Banks' children and as to what rights Banks retained. DHS asserts that it has an interest in establishing paternity, even if that question does not affect its right to reimbursement.
The question of the relative rights of DHS and other parties after the receipt of AFDC funds has received little attention in this Court. However, other courts have considered the issue. In State ex rel. Crews v. Parker, 319 N.C. 354, 354 S.E.2d 501, 505 (1987) a grandmother was allowed to intervene in a settlement between the state and the father of her grandchild for reimbursement for funds she expended before the child became a recipient of AFDC. The court held that the grandmother did not assign all support rights to the state as a condition of receipt of public assistance, but only her right to that support necessary to reimburse the state for the amount of public assistance it expended on behalf of the child, and the grandmother retained an interest in the father's child support obligation. Id. (emphasis added).
One of the issues in Iverson v. Schulte, 367 N.W.2d 570 (Minn.App. 1985) was the extent of the county's interest in the past due support owed by Schulte. The question was whether the county's interest was limited to the support that it provided for Schulte's child, as opposed to all support provided to the Iverson family. Id. at 573. The court held that the assignment of support clause signed by Iverson gave Freeborn County a right to all support owed by Schulte for his child up to the total amount of AFDC paid for the family. Id. at 573. (emphasis added).
In re Marriage of Lathem, 642 S.W.2d 694, (Mo. App. 1982), the sole issue was whether plaintiff could maintain an action reviving a judgment against her former husband to pay child support after assigning her rights against him to the welfare department. Id. at 698. The court held that the plaintiff was a real party in interest and had a right to maintain this action. Id. at 700. "The assignment was complete, but only for the statutory purpose of allowing the state to obtain reimbursement of the sums expended as child support payments. So far as the record shows, the state was never reimbursed in any amount while assistance was being furnished, so under the provision of 45 C.F.R. § 302.51(f), as implemented by § 208.040.5, the assignment terminated, subject to the state's paramount right to recoup its unreimbursed expenditures, when the plaintiff became ineligible for assistance." Id. (emphasis added).
Our statute governing the assignment of rights against the nonsupporting parent is similar to the statutes of other states. These cases teach that the assignment made pursuant to the statutory scheme for AFDC is a limited one designed primarily to facilitate recoupment of public funds and that the assignment does not extinguish all rights of the assignor with regard to support or otherwise. Mississippi's statute clearly establishes DHS' right to reimbursement "for the period of time that assistance is being paid by said department." Accordingly, DHS is entitled to obtain reimbursement of the sum expended as child support payments on the Banks' children. Since the Banks' children are no longer the recipients of AFDC and arrangements have been made to prevent them from continuing as public charges, DHS' interest is extinguished except for its right to recoup its expenditures.
Acknowledging that DHS' interest is limited does not answer the question as to whether DHS has the right to establish paternity. In the instant case, once the court determines how much DHS has expended on Banks' children, someone will be responsible for paying DHS. The question, who, would involve both the $10,000 paid to Banks pursuant to the settlement and Barnett, with respect, at least, to any remaining liability. To the extent that Barnett is potentially liable, that is, to the extent that DHS's claim exceeds the proceeds of the settlement rightfully belonging to DHS by virtue of assignment, and, should Barnett fail to stipulate liability for that amount, DHS should not be impeded in establishing paternity in order that a court may assess that liability.
We assess liability for paternity only where it is determined that the alleged nonsupporting parent is in fact the parent of the children in question. Barnett denies fathering *440 the children. Therefore, in relation to DHS' right to reimbursement, the issue of paternity is a live one, despite the chancellor's reservations concerning the potential effect of a discovery of non-paternity of children scheduled to receive support pursuant to the settlement.
In its present interlocutory posture, neither the amount due DHS nor its procedural rights in establishing liability have been finally addressed by the trial court. I would simply dismiss this appeal as premature and allow the trial court to complete its task.
DAN M. LEE, P.J., and McRAE, J., join this dissent.