Because I believe that this court lacks jurisdiction I am compelled to dissent.
 I.
I agree with Barnett that, pursuant to Rule 54(b) Miss.R.Civ.P., the chancellor's "final judgment" was interlocutory in nature because it did not resolve all of the claims before the court. The Department of Human Services did not seek certification pursuant to Rule 54(b). Without Rule 54(b) certification, this Court does not have jurisdiction to entertain DHS' appeal. May v. V.F.W. Post No. 2539, 577 So.2d 372, 374 (Miss. 1991); Bradley et al. v. Holmes, 242 Miss. 247,134 So.2d 494 (1961).
Rule 54(b) provides:
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is not just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. (Emphasis added.)
The instant case involved multiple parties, as well as, multiple issues, including the Department of Human Services' (DHS) motion to intervene in the settlement, DHS's motion for a blood test and DHS's right to reimbursement for past assistance provided to Betty Jean Banks. With respect to those issues, the chancellor rendered a "final judgment" that provided:
 1. The Mississippi Department of Human Services ("Department") is allowed to intervene in this action;
 2. The Department's Motion for Blood Test is moot by prior like Order of this Court Under date of October 3, 1991; and
 3. This action is dismissed with prejudice as to the rights of Plaintiff, the minors and the Department with the exception of the Department's right with respect to the amount of any unpaid support obligation that accrued under lawful assignment *Page 438 to the extent of the amount of past assistance paid to Plaintiff by the Department which has not been reimbursed to the Department. (Emphasis supplied.)
Clearly, even though the chancellor's order was designated as a "final judgment", it did not adjudicate all of the claims or rights of the parties. This "final judgment" only disposed of two issues. First, the chancellor recognized that DHS had an interest in the litigation and allowed the agency to intervene to protect its interest. Second, the court found that since Timothy Barnett had agreed to support his three purported children, DHS's motion for a blood test was moot. While the chancellor recognized that DHS was entitled to reimbursement for its past support of the children, it did not determine how much money DHS was due or who owed DHS the money.
Under these circumstances, it can hardly be said that the trial judge's "final judgment" was final, because it was not a final decision on the whole controversy. Rabekoff v. Lazere Co.,Inc., 323 F.2d 865 (2d Cir. 1968). Further steps had to be taken to determine how much money DHS was owed and to assess liability for that amount. Teller Environmental Systems, Inc. v. UnitedStates, 802 F.2d 1385, 1389-90 (Fed. Cir. 1986).
Reasoning that the order is interlocutory is in line with theComment to Rule 54(b), as well as with case law.
 The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.
 The rule does not require that a judgment be entered when the court disposes of one or more claims or terminates that action as to one or more parties. Rather, it gives the court discretion to enter a final judgment in these circumstances and it provides much needed certainty in determining when a final and appealable judgment has been entered. If the court chooses to enter such a final order, it must do so in a definite, unmistakable manner.
 Absent a certification under Rule 54(b), any order in a multiple party or multiple claim action, even if it appears to adjudicate a separable portion of the controversy, is interlocutory.
 If the court decides that an order that does not dispose of all the claims of the parties and that is not appealable under any other statute or rule would be given the status of a final judgment, Rule 54(b) requires it to take two separate steps before an appeal can be perfected. The court must make "an express determination that there is no just reason for delay" and it must make "an express direction for the entry of judgment." (emphasis added).
In addressing its jurisdiction to hear an appeal in May v.V.F.W. Post No. 2539, 577 So.2d 372, 374 (Miss. 1991), this Court recognized that a lower court may direct the entry of a final judgment pursuant to Rule 54(b) if it determines that there is no just reason for delay and so state. "Moreover, [w]hile we will not require a trial court to set forth specific reasons and findings prefatory to entering a Rule 54(b) judgment, we will look with disfavor on such judgment. Indeed, unless the reason the judgment was granted is clear the record, we will not search for a justification, but will vacate the appeal." Citing, Cox v.Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897, 901 (Miss. 1991).
In light of May this Court should vacate DHS' appeal. There is nothing in the record to show that DHS requested a certification under Rule 54(b) which would have cleared the way for the agency to properly perfect an appeal from the judgment.
 II.
While the issue of DHS' right to establish paternity is not properly before this Court, it is clear that DHS has an interest in this action up to the amount of funds expended on the Banks' children.
There is no question that Banks assigned her rights against Barnett, the purported nonsupporting parent, to DHS when she began receiving welfare benefits in 1985. See Miss. Code Ann. section 43-19-35 (1976). There is a question, however, whether DHS has an interest in the action beyond reimbursement for past support expended on the *Page 439 
Banks' children and as to what rights Banks retained. DHS asserts that it has an interest in establishing paternity, even if that question does not affect its right to reimbursement.
The question of the relative rights of DHS and other parties after the receipt of AFDC funds has received little attention in this Court. However, other courts have considered the issue. InState ex rel. Crews v. Parker, 319 N.C. 354, 354 S.E.2d 501, 505 (1987) a grandmother was allowed to intervene in a settlement between the state and the father of her grandchild for reimbursement for funds she expended before the child became a recipient of AFDC. The court held that the grandmother did not assign all support rights to the state as a condition of receipt of public assistance, but only her right to that supportnecessary to reimburse the state for the amount of publicassistance it expended on behalf of the child, and the grandmother retained an interest in the father's child support obligation. Id. (emphasis added).
One of the issues in Iverson v. Schulte, 367 N.W.2d 570
(Minn.App. 1985) was the extent of the county's interest in the past due support owed by Schulte. The question was whether the county's interest was limited to the support that it provided for Schulte's child, as opposed to all support provided to the Iverson family. Id. at 573. The court held that the assignment of support clause signed by Iverson gave Freeborn County a right to all support owed by Schulte for his child up to the totalamount of AFDC paid for the family. Id. at 573. (emphasis added).
In re Marriage of Lathem, 642 S.W.2d 694, (Mo. App. 1982), the sole issue was whether plaintiff could maintain an action reviving a judgment against her former husband to pay child support after assigning her rights against him to the welfare department. Id. at 698. The court held that the plaintiff was a real party in interest and had a right to maintain this action.Id. at 700. "The assignment was complete, but only for thestatutory purpose of allowing the state to obtain reimbursementof the sums expended as child support payments. So far as the record shows, the state was never reimbursed in any amount while assistance was being furnished, so under the provision of45 C.F.R. § 302.51(f), as implemented by § 208.040.5, the assignment terminated, subject to the state's paramount right to recoup its unreimbursed expenditures, when the plaintiff became ineligible for assistance." Id. (emphasis added).
Our statute governing the assignment of rights against the nonsupporting parent is similar to the statutes of other states. These cases teach that the assignment made pursuant to the statutory scheme for AFDC is a limited one designed primarily to facilitate recoupment of public funds and that the assignment does not extinguish all rights of the assignor with regard to support or otherwise. Mississippi's statute clearly establishes DHS' right to reimbursement "for the period of time that assistance is being paid by said department." Accordingly, DHS is entitled to obtain reimbursement of the sum expended as child support payments on the Banks' children. Since the Banks' children are no longer the recipients of AFDC and arrangements have been made to prevent them from continuing as public charges, DHS' interest is extinguished except for its right to recoup its expenditures.
Acknowledging that DHS' interest is limited does not answer the question as to whether DHS has the right to establish paternity. In the instant case, once the court determines how much DHS has expended on Banks' children, someone will be responsible for paying DHS. The question, who, would involve both the $10,000 paid to Banks pursuant to the settlement and Barnett, with respect, at least, to any remaining liability. To the extent that Barnett is potentially liable, that is, to the extent that DHS's claim exceeds the proceeds of the settlement rightfully belonging to DHS by virtue of assignment, and, should Barnett fail to stipulate liability for that amount, DHS should not be impeded in establishing paternity in order that a court may assess that liability.
We assess liability for paternity only where it is determined that the alleged nonsupporting parent is in fact the parent of the children in question. Barnett denies fathering *Page 440 
the children. Therefore, in relation to DHS' right to reimbursement, the issue of paternity is a live one, despite the chancellor's reservations concerning the potential effect of a discovery of non-paternity of children scheduled to receive support pursuant to the settlement.
In its present interlocutory posture, neither the amount due DHS nor its procedural rights in establishing liability have been finally addressed by the trial court. I would simply dismiss this appeal as premature and allow the trial court to complete its task.
DAN M. LEE, P.J., and McRAE, J., join this dissent.