Argued August 20, affirmed October 22,
reconsideration denied November 29,
petition for review denied December 11, 1979 (288 Or 173)

MEDSKER,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
DEPARTMENT OF HUMAN RESOURCES,
*Respondent.*

(No. 2-1801-GO1680-8, CA 14107)

601 P2d 865

Jan Perkins, Klamath Falls, argued the cause and filed the brief for petitioner.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Petitioner seeks judicial review of an order of the Fair Hearings Unit of the Adult and Family Services Division (AFS) which upheld a determination that a child support payment made to AFS by petitioner's former husband was properly retained by the agency for application to arrearages for past unpaid support rather than disbursed to petitioner for current support.

The single issue presented is whether petitioner's due process rights were violated when AFS retained the child support payment. Her only contention is that she was entitled to notice from AFS of the regulations and statutes controlling disbursement of child support payments prior to the agency's retention of the payment.

Petitioner was a recipient of Aid to Families with Dependent Children (ADC) benefits until August 31, 1978. During the period when she was receiving benefits, her former husband was obligated by court order to pay $180 per month in child support. Arrearages accrued during the period.

In September, 1978, after termination of the ADC benefits at petitioner's request, her former husband made two child support payments. The first was received by AFS on September 7 and was disbursed to petitioner. The second was received on September 28 and was retained by AFS as reimbursement for public assistance previously paid to petitioner. Had the second payment been received on or after October 1, it would have been disbursed to petitioner as child support for that month.

Petitioner contends that if she had had notice of the scheme controlling the distribution of the child support payments, she could have arranged with her former husband to coordinate the dispatch of his payments with the statutory and regulatory requirements

so that the payments would be disbursed to her as the obligor intended rather than retained by AFS.

42 USC § 602(a)(26(A) provides that a state ADC plan must require, as a condition for eligibility for ADC benefits, that the caretaker parent who is entitled to receive court ordered child support from the other parent assign that right to child support to the state. *See also* 45 CFR § 232.11. Oregon satisfies this requirement by ORS 418.042, which provides:

"(1) Aid, as defined in subsection (2) of ORS 418.035, shall not be granted to, or on behalf of, any applicant, or recipient and for as long as the applicant or recipient refuses to assign to the Department of Human Resources any rights to support from any other person such applicant may have in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which has accrued at any time such assignment is executed. \*\*\*"

When she applied for aid, petitioner assigned the right to court ordered child support paid to her during the time assistance was to be received.[1] *See* OAR 461-05-435. On termination of a grant, the state retains for a period of three months (42 USC § 657(c)) the right to collect support payments in order to be reimbursed for past assistance. *See* OAR 461-35-003.[2] 45 CFR § 301.51(f) provides in part:

---

[1] The record does not contain the assignment, nor did the hearings officer make a reference to it in his findings in the order. The parties, however, agree that petitioner did make an assignment, but we are not informed of its terms.

[2] OAR 461-35-003:

"When a family receiving public assistance terminates its grant, child support will be distributed in the following sequence:

"(1) The court ordered amount due *for the current month* will be paid to the obligee.

"(2) Arrears accrued since the most recent closure of the public assistance grant will be paid to the obligee.

"(3) *Unreimbursed assistance collectible from the remaining arrearage will be paid to the Department of Human Resources.*

"(4) Remainder will be paid to the obligee." (Emphasis supplied.)

"(f) When a family ceases receiving assistance under the State's title IV-A plan, the assignment of support rights under § 232.11 of this title terminates, *except with respect to the amount of any unpaid support obligation that has accrued under such assignment.* From this accrued amount, the IV-D agency shall attempt to collect such unpaid obligation. Under this requirement:

"(1) *Such collection shall be used to reimburse any amounts of past assistance which have not been reimbursed under paragraph (b)(4) of this section;*

"(2) * * *

"(3) *Only amounts collected pursuant to this paragraph which exceed the amount of unreimbursed past assistance shall be paid to the family;* (Emphasis supplied.)

"(4) * * *."

■ The effect of the assignment of child support payments is to transfer to the state whatever rights the assignor had in the support rights against the obligor. "The support is collected on behalf of the state as assignee and not on behalf of the recipient." *Gibson v. Johnson,* 35 Or App 493, 499, 582 P2d 452, *rev den* 284 Or 521 (1978). Section 656(a) of Title 42 USC says that the child support rights assigned to the state constitute an obligation owed to the state by the person responsible for providing the support. The state has the authority to enforce the support obligation and the right to collect the payments directly. ORS 23.765(1)(a); ORS 23.777; ORS 23.789; *State ex rel Hansen v. McKay,* 31 Or App 631, 571 P2d 166 (1977).

■ Nonetheless, it does not necessarily follow from the combination of federal and state statutes and regulations that the assignment utterly destroys any interest the custodial parent had in the other parents' duty to pay or payments which are made. OAR 461-35-003 (*supra,* n 2) by itself shows clearly that the obligee is entitled to receive (from the state) out of any money received from an obligor in a particular month, first, the amount due as support for that month, second, any

[773]

amount remaining up to the total of arrearages accrued after the termination of assistance,[3] and, finally, any money that might remain as excess after reimbursement by the state to itself for assistance. Within that scheme of things it cannot fairly be said that an obligee had no interest in the support obligation after the assignment.

It is important to notice what is and what is not being claimed by the petitioner. She does *not* challenge the validity of the state statutes and regulations that are designed to accomplish reimbursement. She does *not* assert that she was denied due process of the sort called "the requirement of notice and an opportunity to be heard." *See Fuentes v. Shevin*, 407 US 67, 80-82, 92 S Ct 1983, 32 L Ed 2d 556 (1972). She *does* claim that had she been given "proper notice in advance" she would have had the possibility of making an arrangement with her former husband so that the events giving rise to the disadvantage over application of the unchallenged statutes and regulations would not have occurred. Therefore, she says, she was deprived of due process because the state failed to give her that notice.[4]

Petitioner has cited us to no case which holds that the state is under a due process obligation to give persons subject to its statutes and regulations explicit and direct notice of their content and application, and it takes little imagination to visualize the chaos that would result if that idea were to be imported into the body of procedural due process law. Unlike garnishment of wages[5], replevy of chattels[6] termination of

---

[3] Therefore, had the father here not paid anything in September but made two payments in October, all of the money would have gone to the mother.

[4] AFS does not contend that any notice was given petitioner of the content of the statutes and regulations or of their applicability to her specific situation until after the second payment had been retained.

[5] *Sniadach v. Family Finance Corporation*, 395 US 337, 89 S Ct 1820, 23 L Ed 2d 349 (1969).

[6] *Fuentes v. Shevin, supra.*

welfare benefits[7] or termination of public employment[8], the situation here is not one where some sort of systematic, advance opportunity for contest is required to ameliorate the risk of erroneous deprivation. While it is true that petitioner had an interest in her ex-husband's payments to the state which was "more than an abstract need or desire for it" and perhaps "more than a unilateral expectation of it," it is also true that whatever "legitimate claim of entitlement" (*see Board of Regents v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972)), she had, nothing was taken from her because she lacked notice. Put simply, the facts fit the applicable law, and she does not claim otherwise. It was not a deprivation of due process that she was not afforded a notice that might have allowed the facts to have been changed.

Affirmed.

---

[7] *Goldberg v. Kelly*, 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970).

[8] *Tupper v. Fairview Hospital*, 276 Or 657, 556 P2d 1340 (1976).