THE STATE OF NORTH CAROLINA BY AND THROUGH THE PENDER COUNTY CHILD SUPPORT ENFORCEMENT AGENCY, *EX REL.* ALENE LEWIS CREWS, APPELLEE; ALENE LEWIS CREWS, INTERVENOR-APPELLANT v. FREDDIE PARKER, AKA FREDERICK EDGE PARKER, JR., APPELLEE

No. 549PA86

(Filed 7 April 1987)

1. Social Security and Public Welfare § 2— acceptance of public assistance—assignment of rights to state—limited to funds expended by state

In an action to recover public assistance funds from the father of a child who lived with her grandmother, the grandmother did not assign all support

rights to the state as a condition of receipt of public assistance, but only her right to that support necessary to reimburse the state for the amount of public assistance it expended on behalf of the child, and the grandmother retained an interest in the father's child support obligation. N.C.G.S. § 110-137.

**2. Rules of Civil Procedure § 24— child support action between state and father — grandmother's right to intervene**

A grandmother who sought reimbursement from the father of her grandchild for funds expended prior to the receipt of AFDC payments was entitled to intervene in an action by the state against the father for reimbursement of AFDC funds where the state had proposed a settlement. The grandmother's interest would clearly be impaired by any judgment involving defendant's child support obligation which failed to take her claim for reimbursement into account. N.C.G.S. § 1A-1, Rule 24(a)(2).

Justice WEBB dissenting.

ON intervenor's petition for discretionary review of the decision of the Court of Appeals, 82 N.C. App. 419, 346 S.E. 2d 270 (1986), affirming order of *Morris-Goodson, J.,* denying intervenor's motion to intervene, filed 12 December 1985 in District Court, PENDER County. Heard in the Supreme Court 11 February 1987.

*Lacy H. Thornburg, Attorney General, by T. Byron Smith, Assistant Attorney General, and Harold L. Pollock, for the state, appellee.*

*Pisgah Legal Services, Inc., by Curtis B. Venable, Legal Services of the Lower Cape Fear, by Mason Hogan, and LSNC Resource Center, by Pam Silberman, for Alene Lewis Crews, intervenor-appellant.*

MARTIN, Justice.

The sole issue for review in this case is whether the Court of Appeals correctly affirmed the trial court's denial of appellant Alene Crews' motion to intervene in an action for child support brought against defendant Parker by the State of North Carolina. For the reasons set forth below, we reverse the Court of Appeals.

The record establishes that Cheryl Michele Crews was born 5 April 1968 and has lived with her grandmother, appellant Alene Crews, since birth. Neither biological parent has ever provided support for the child. Mrs. Crews applied for public assistance from the Aid to Families with Dependent Children (AFDC) program in 1981. At that time she identified defendant Parker as the

father of the child. The state, through the Pender County Child Support Enforcement Agency, acted upon this information in February of 1985, filing a civil complaint against defendant Parker in which it sought an adjudication of paternity, an order mandating prospective child support, and an order mandating reimbursement of past public assistance expenditures.

Defendant and the state presented a proposed settlement to the trial court for approval. This consent order provided that defendant would acknowledge paternity and agree to pay $125 per month as child support and a total of $900 as settlement of public assistance arrearages. (Actual arrearages were in excess of $2,000.) Mrs. Crews moved to intervene, alleging that the state had failed to assist her in obtaining compensation from the defendant for amounts expended during the many years she had supported the child prior to receiving public assistance. (Presuming a minimal payment of $50 per month, this claim would total about $6,000.) She requested not only that the state be enjoined from entering into any settlement which failed to take into account her claim for reimbursement of past support but also that the state be compelled to aid her in recovering such reimbursement from the defendant. The trial court denied her motion to intervene, concluding that Mrs. Crews had assigned *all* support rights to the state as a condition of her receipt of public assistance, including the right to compensation for past support. The Court of Appeals affirmed.

As a preliminary matter, we note that the North Carolina Rules of Civil Procedure permit intervention of right:

> When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

N.C.R. Civ. P. 24(a)(2). Mrs. Crews contends that notwithstanding a statutory assignment of support rights to the state, she has retained an interest in child support that is not adequately represented by the parties in the state's action against defendant Parker. We agree.

[1] We will first address the question of the effect of the statutory assignment upon Mrs. Crews' interest. Title IV of the Social Security Act establishes AFDC and sets forth requirements that the states must meet under the Federal Child Support Enforcement Program. 42 U.S.C. §§ 601-615, 651-665 (1983 & Cum. Supp. 1986). In order to receive federal AFDC funding, a state must submit its public assistance plan for approval. 42 U.S.C. § 601 (1983). This plan must provide, inter alia, that recipients of assistance

> assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed.

42 U.S.C. § 602(a)(26)(A) (Cum. Supp. 1986); *see also* 45 C.F.R. § 232.11(a) (1986).

Contrary to the interpretation of the Court of Appeals, the language of 42 U.S.C. § 602(a)(26)(A) does not itself create an assignment of support rights by operation of law. The provision merely directs the state to legislate such an assignment in formulating its own assistance plan. North Carolina complied with the federal requirements by enacting N.C.G.S. § 110-137 (Cum. Supp. 1985). Consequently, the only assignment in the record before us is the one created by operation of *state* law:

> § 110-137. Acceptance of public assistance constitutes assignment of support rights to the State or county.
>
> By accepting public assistance for or on behalf of a dependent child or children, the recipient shall be deemed to have made an assignment to the State or to the county from which such assistance was received of the right to any child support owed for the child or children *up to the amount of public assistance paid.* The State or county shall be subrogated to the right of the child or children or the person having custody to initiate a support action under this Article and to recover any payments ordered by the court of this or any other state.

(Emphasis added.)

The starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 64 L.Ed. 2d 766 (1980). Recognizing that the custodian of a minor child may make a claim against the child's parent for amounts expended in raising the child, N.C.G.S. § 50-13.4, a reading of the plain language of section 110-137 (with particular attention to the key phrase "up to the amount of public assistance paid") supports Mrs. Crews' assertion that she made only a partial assignment of this support right by accepting AFDC benefits. That is, she assigned her right to that support necessary to reimburse the state for the amount of public assistance it expended on behalf of the child, but not her right to compensation already owed for the years of support prior to her receipt of AFDC.

In reaching the opposite conclusion, the Court of Appeals failed to construe the phrase "up to the amount of public assistance paid." Whether this was an oversight or a response to concerns that the state law might be in conflict with federal regulations, we shall not venture to guess. It is true that the state must administer its public assistance program in accordance with federal regulations. N.C.G.S. § 108A-27 (Cum. Supp. 1985). However, we would also point out that a state plan need not strictly follow the language of 42 U.S.C. § 602(a)(26)(A) in order to satisfy federal requirements but may substitute an assignment by operation of law which is "substantially identical" to that described by the federal act. 45 C.F.R. § 232.11(b) (1986). We observe that North Carolina's public assistance plan has been duly approved.

Here the import of section 110-137 is entirely consistent with our reading of applicable federal legislation. The federal statutes clearly express the intention that an AFDC recipient, notwithstanding an assignment by operation of state law, retain some active and continuous interest in support rights. *See Medsker v. Adult and Family Services Division*, 42 Or. App. 769, 601 P. 2d 865 (1979) (an assignment does not utterly destroy any interest the custodial parent had in the other parent's duty to pay or payments which are made); *accord In re Marriage of Stutsman*, 311 N.W. 2d 73 (Iowa 1981); *In re Marriage of Lathem*, 642 S.W.

2d 694 (Mo. App. 1982); *Ostwald v. Ostwald,* 331 N.W. 2d 64 (S.D. 1983). For example, under 42 U.S.C. § 657(b)(1) (Cum. Supp. 1986), an assignor is still entitled to the first $50 of any support that the state is able to collect, regardless of any outstanding arrearages owed to the state. If the state collects support in excess of the public assistance paid, the assignor is entitled to receive the excess. 42 U.S.C. § 657(b)(4) (Cum. Supp. 1986). When public assistance ends, the assignment terminates, except as to unpaid public assistance arrearages, and support rights revert back to the assignor. 42 U.S.C. § 657(c) (Cum. Supp. 1986); *see also* 45 C.F.R. § 302.51(f) (1984).

Hence we discern no conflict between the federal guidelines and the provision of N.C.G.S. § 110-137 which limits the assignment to the amount of public assistance paid. Section 110-137 is substantially identical to the federal act and may properly govern the question of what rights Mrs. Crews has retained. We hold that the language of section 110-137 operates to assign to the state or county only the right to reimbursement for those amounts of support money provided through AFDC. Thus, Mrs. Crews retained her interest in defendant Parker's child support obligation.

The reliance of the Court of Appeals on *Matter of Stovall,* 721 F. 2d 1133 (7th Cir. 1983), is misplaced. While that case did find an Illinois assistance plan to be substantially identical to the federal AFDC requirements, it interpreted the language of 42 U.S.C. § 602(a)(26)(A) without expressly determining the implications of the plan's assignment provisions, which included the phrase "up to the amount of financial aid provided." Thus, *Stovall* provides no real insight as to the appropriate construction of limiting language in state plan assignment provisions. Had it done so, we might have found this particular federal ruling somewhat more instructive. We note also that the sole question before the *Stovall* court was whether the defendant-father's child support obligation was dischargeable in bankruptcy. Consequently, we find it less than persuasive as precedent on the issue of intervention rights.

[2]  Having resolved that Mrs. Crews retained an interest in the support obligation of defendant Parker, we now consider whether the protection of this interest would be impaired within the mean-

ing of N.C.R. Civ. P. 24(a)(2) by disposition of the child support action without Mrs. Crews' intervention. Mrs. Crews contends that she is in privity with the state and that a settlement between the state and the defendant would merge all claims, thereby foreclosing later action upon the defendant's obligation.

We have held that the state is the real party in interest in actions to recover public assistance paid for support of a child. *Settle v. Beasley*, 309 N.C. 616, 308 S.E. 2d 288 (1983). In order for a prior judgment to bind Mrs. Crews, an individual not a party to the action, she must be in privity with the real party in interest. *See id.* Privity, for purposes of estoppel, denotes a mutual or successive relationship to the same rights of property. *Masters v. Dunstan*, 256 N.C. 520, 124 S.E. 2d 574 (1962).

Here, by virtue of the partial assignment, Mrs. Crews and the state have concurrent interests in defendant's support obligation. However, it is not necessary to our analysis of the intervention rules that we determine whether Mrs. Crews and the state are in privity under the facts of this case. We are guided in our reasoning by the wisdom of the commentary to N.C.G.S. § 1A-1, Rule 24(a)(2) (1983):

> In respect to subsection (2), it will be noted that the harm to the intervenor's interest is to be considered from a "practical" standpoint, rather than technically. In other words, the intervenor need not be threatened with being bound in a strict res judicata sense.

Clearly Mrs. Crews' interest would be impaired by any judgment involving defendant's child support obligation which failed to take her claim for reimbursement into account, regardless of whether she would be bound by that judgment. She would, as a practical matter, suffer the expense and inconvenience of bringing a separate suit against defendant. And, although we have declined to decide if defendant's potential claim of res judicata has merit, Mrs. Crews would be impeded by his ability to force litigation of that additional issue.

Our courts favor the swift and efficient resolution of disputes. Allowing the state to settle defendant's obligation to pay public assistance arrearages without providing Mrs. Crews an opportunity to litigate in this action her own claim for arrearages

inevitably prolongs and complicates the litigation process. This is precisely the type of situation contemplated by the rule for intervention of right. For this reason as well as those stated above, the decision of the Court of Appeals is reversed and the case remanded to that court for further remand to the trial court with instructions to allow intervention pursuant to N.C.R. Civ. P. 24(a)(2).

Reversed and remanded.

Justice WEBB dissenting.

I dissent. I believe that the Court of Appeals opinion written by Judge Martin is correct. I vote to affirm the Court of Appeals on the basis of the opinion of the Court of Appeals. I note that nowhere in Judge Martin's opinion does he say that the language of 42 U.S.C. § 602(a)(26)(A) creates an assignment of support rights by operation of law.