Jackson County, By and Through The Child Support Enforcement Agency, ex rel. Doris Smoker, Plaintiff v. Owen Smoker, Jr., Defendant

No. 9330DC289

(Filed 5 July 1994)

1. **Indians § 7 (NCI4th)— actions to recover public assistance—child support—concurrent jurisdiction of state and tribal courts**

   The state and tribal courts exercise concurrent jurisdiction over actions to recover debts arising from payment of past public assistance, and, likewise, actions for the establishment of future child support.

   **Am Jur 2d, Indians § 63.**

2. **Indians § 7 (NCI4th)— action for reimbursement of public assistance—issue not addressed in tribal court—subject matter jurisdiction in state court**

   Institution of a state court action for reimbursement for public assistance would not unduly infringe upon tribal sovereignty, since the prior tribal court order involved only child support, not reimbursement for public assistance; the two cases involved different causes of action; the State was not a party to the tribal court action; the issue of reimbursement could not have been raised by either parent; and the tribal court therefore could not have adjudicated a claim of the State to recover public assistance.

   **Am Jur 2d, Indians § 63.**

3. **Indians § 7 (NCI4th)— child support—exercise of subject matter jurisdiction by state court—no infringement of tribal sovereignty**

   It would not unduly infringe upon tribal sovereignty if the state court were permitted to exercise subject matter jurisdiction over the issue of child support where that issue had been litigated previously in the tribal court without notice to the State, since the importance of the AFDC program outweighs the potential infringement, and orders of child support are typically non-permanent and transitory in nature, with states often modifying orders initially rendered in another state.

   **Am Jur 2d, Indians § 63.**

JACKSON COUNTY EX REL. SMOKER v. SMOKER

[115 N.C. App. 400 (1994)]

Appeal by plaintiff from order entered 17 September 1992 by Judge Danny E. Davis in Jackson County District Court. Heard in the Court of Appeals 8 December 1993.

*Attorney General Michael F. Easley, by Assistant Attorney General T. Byron Smith and Associate Attorney General Sybil Mann, for the State.*

*Gary E. Kirby for defendant.*

*Haire, Bridgers & Spiro, P.A., by Ben Oshel Bridgers, for Eastern Band of Cherokee Indians, amicus curiae.*

LEWIS, Judge.

As in the companion case of *State ex rel. West v. West,* No. 9330DC223 (N.C. App. July 5, 1994), this case involves the issue of concurrent jurisdiction between the Court of Indian Offenses of the Eastern Band of Cherokee Indians (hereinafter "the tribal court") and the North Carolina state courts. Owen Smoker and Doris Smoker, estranged husband and wife, as well as their three children, are members of the Eastern Band of Cherokee Indians and reside on the Cherokee reservation.

Prior to the initiation of any lawsuit in the state courts, Doris Smoker brought an action in the tribal court for custody of and support for her three minor children. In a judgment entered 5 November 1991 and signed 25 November 1991, the tribal court awarded Doris Smoker possession of the marital home and custody of the three children. The court determined that Owen Smoker did not owe any child support and that he retained a vested interest in the home as equity.

As of 3 December 1991, Doris Smoker had received Aid to Families with Dependant Children (hereinafter "AFDC") benefits totalling $5,967.00. The record does not reveal how much had been received at the time the tribal court entered its order on 5 November 1991. Under North Carolina law, acceptance of public assistance benefits creates a debt to the State in the amount of public assistance paid. N.C.G.S. § 110-135 (1991). Also, by accepting the benefits, Doris Smoker assigned to the State her right to child support from Owen Smoker, and the State became subrogated to her right to initiate an action for child support. N.C.G.S. § 110-137 (1991). The State has a duty to "take appropriate action" to ensure that the responsible parent or parents support the child. N.C.G.S. § 110-138 (1991). Because the IV-D child support enforcement program in North Carolina is administered by state agencies in some counties, and by county agencies in other

counties, for ease of reference in this opinion we will refer to the administrative authority as "the State." *See* N.C.G.S. §§ 110-129(5), -137, -138, -141 (1991).

On 10 January 1992, the County of Jackson, by and through its Child Support Enforcement Agency (hereinafter "the State"), filed a complaint in Jackson County District Court on behalf of Doris Smoker, seeking reimbursement from Owen Smoker (hereinafter "defendant") for past public assistance paid and for all future sums paid as of the date of the hearing in district court, as well as an order for reasonable child support. The State's complaint alleged that defendant was financially able to support his children and that he had failed and refused to execute a voluntary support agreement with plaintiff.

In his answer to the complaint, defendant alleged that he had been providing support in "cash and merchandise" until the tribal court ended his future obligations for child support as part of an equitable distribution settlement. On 13 February 1992, defendant filed a motion to dismiss the state court action for lack of subject matter jurisdiction on the basis that the tribal court had already adjudicated issues concerning child support in November 1991. We note that the State had no notice of and did not participate in the prior tribal court action.

On 17 September 1992 the state court filed an order dismissing the State's action for lack of subject matter jurisdiction. The court noted that the tribal court had entered a judgment determining the issue of child support, and that the judgment was filed prior to the institution of the state court action. The court recognized that the tribal court and the state court had concurrent jurisdiction over child support matters, and that the State's claim for support "is a subrogation from the claim of Doris S. Smoker, the recipient of the public assistance benefits." The court concluded that although both courts would have "current" jurisdiction, the tribal court had exercised jurisdiction first and remained the proper forum for the resolution of matters involving child support. The State now appeals from the dismissal of its case.

On appeal the State argues that it should not be bound by the tribal court judgment, because it was not a party to the tribal court action and was not in privity with any of the parties. The State contends that it is the real party in interest in actions to recover amounts of public assistance paid and to collect future support. *See Settle v. Beasley,*

309 N.C. 616, 618, 308 S.E.2d 288, 289 (1983). Defendant, on the other hand, contends that the State should have proceeded in the tribal court, as it apparently has in the past. Defendant points out that Doris Smoker had the right to sue for child support on her own behalf, because she may have been entitled to money beyond the amount owed to the State. *See State ex rel. Crews v. Parker*, 319 N.C. 354, 358, 354 S.E.2d 501, 504 (1987).

We note that the only issue before us is whether the state trial court had subject matter jurisdiction. Defendant has not raised any objections to the state court's assertion of personal jurisdiction over him, and we will not address that issue here. After examining statutory authority and caselaw, we conclude that in this case the state court did have subject matter jurisdiction over the State's action for reimbursement and the establishment of child support.

I.

[1] It is clear that in North Carolina the tribal courts and the state courts exercise concurrent jurisdiction over actions to collect debts owed to the State for payment of past public assistance and to obtain judgments for future support. *Jackson County Child Support Enforcement Agency ex rel. Jackson v. Swayney*, 319 N.C. 52, 60-61, 352 S.E.2d 413, 418 (actions involving paternity, however, cannot be tried in state courts if defendant is an Indian and resides on reservation), *cert. denied*, 484 U.S. 826, 98 L. Ed. 2d 54 (1987). In *Swayney* the North Carolina Supreme Court set forth the analysis to be used in addressing the issue of the assertion of state court jurisdiction over actions involving Indian defendants. The Court first examined whether the exercise of state court jurisdiction over Indian defendants was pre-empted by federal law, and concluded that it was not. 319 N.C. at 57-58, 352 S.E.2d at 416-17. The Court then considered whether the exercise of state court jurisdiction would unduly infringe on the tribe's right of self-governance, and adopted the three-part infringement test set forth in *New Mexico ex rel. Department of Human Services v. Jojola*, 660 P.2d 590, *appeal dismissed and cert. denied*, 464 U.S. 803, 78 L. Ed. 2d 69 (1983). The three criteria are: "(1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the Indian reservation, and (3) the nature of the interest to be protected." 319 N.C. at 59, 352 S.E.2d at 417 (citing *Jojola*, 660 P.2d at 592-93).

Applying the first two criteria, the *Swayney* Court noted that the action for reimbursement and child support involved the county, a

non-Indian plaintiff, and that the application for AFDC benefits occurred on the reservation, where the mother, father, and child resided. *Id.* at 59-60, 352 S.E.2d at 418. Under the third criterion, the Court compared the State's interest in providing an AFDC program with the tribe's interest in self-governance. *Id.* at 60, 352 S.E.2d at 418. The Court found that there was "nothing which suggests that the tribe's interest in self-governance would be significantly affected by the exercise of concurrent state and tribal court jurisdiction over actions to collect debts lawfully owed to the State." *Id.* Thus, the Court concluded that there was no undue infringement and that the state and tribal courts exercised concurrent jurisdiction over actions to recover debts arising from payment of past public assistance, and, likewise, actions for the establishment of future child support. *Id.* at 60-61, 352 S.E.2d at 418.

The *Swayney* Court's conclusion regarding the pre-emption issue is binding upon us, and we need not address it here. However, we are unable to adopt, without discussion, *Swayney's* conclusion regarding the infringement issue, because the facts here differ from those in *Swayney.* Here, the tribal court had already acted on the issue of current child support before the State attempted to institute an action in state court. We note that the State had no notice of and did not participate in the tribal court proceeding. The issue before us, then, is whether institution of an action by the State in state court would unduly infringe upon tribal rights of self-governance in light of the prior tribal court proceeding. Although the State sued for both reimbursement and the establishment of child support in the later action in Jackson County District Court, for the purposes of this opinion we will address each contention separately. The two issues involved in this case are: (1) the State's right to sue a responsible parent for reimbursement for past public assistance paid, and (2) the State's right to sue for the establishment of current or future child support.

II.

[2] The State's right to sue for reimbursement for public assistance arises from N.C.G.S. § 110-135 (1991), which provides:

> Acceptance of public assistance by or on behalf of a dependent child creates a debt, in the amount of public assistance paid, due and owing the State by the responsible parent or parents of the child. Provided, however, that in those cases in which child support was required to be paid incident to a court order during the

time of receipt of public assistance, the debt shall be limited to the amount specified in such court order.

The State's right to recover amounts paid in public assistance does not depend upon a prior support order or the establishment of current or future support. Although section 110-135 refers to orders of child support, the reference is only in the context of limiting the amount the State may recover. Thus, in those cases where public assistance was paid during a time period covered by an existing order for child support, the statute places a cap on the amount the State may recover. Otherwise, in the absence of any child support orders, the mere fact that public assistance benefits were paid entitles the State to sue the responsible parent for reimbursement.

In the case at hand, the prior tribal court order regarding child support had no bearing on the subject matter jurisdiction of the state court over the State's action for reimbursement under section 110-135. The two cases involve different causes of action. The State was not a party to the tribal court action, the issue of reimbursement could not have been raised by either parent, and the tribal court, therefore, could not have adjudicated a claim of the State to recover public assistance. Because there is no prior tribal order regarding reimbursement, this claim is indistinguishable from the situation in *Swayney*. Thus, according to *Swayney*, we find that institution of a state court action for reimbursement would not unduly infringe upon tribal sovereignty. We note that we are only concerned with the issue of subject matter jurisdiction, and we need not address the issue of whether the State would be limited in the amount it may recover by the prior tribal court support order. We therefore reverse the trial court's dismissal of the State's claim for reimbursement under section 110-135.

III.

The State's right to seek reimbursement for the amount of public assistance paid is separate and distinct from its ability to recover accrued child support payments, enforce a child support obligation, and sue for the establishment of reasonable child support. The right to bring an action regarding child support arises from N.C.G.S. § 110-137 (1991), which provides:

By accepting public assistance for or on behalf of a dependent child or children, the recipient shall be deemed to have made an assignment to the State or to the county from which such assist-

ance was received of the right to any child support owed for the child or children up to the amount of public assistance paid. The State or county shall be subrogated to the right of the child or children or the person having custody to initiate a support action under this Article and to recover any payments ordered by the court of this or any other state.

Under this section, if any child support payments were owed at the time of acceptance of assistance, those payments are assigned to the State, and the State may institute an action to recover them. If no support was owed, the State is subrogated to the right of the child or custodian to initiate an action for child support. *See State ex rel. Crews v. Parker*, 319 N.C. 354, 360, 354 S.E.2d 501, 505 (1987) (stating that AFDC recipient and State have concurrent interests in defendant's support obligation.) According to N.C.G.S. § 110-138 (1991), the State is required to take action to ensure that the responsible parent or parents support the child. That section provides:

Whenever a county department of social services receives an application for public assistance on behalf of a dependent child, and it shall appear to the satisfaction of the county department that . . . the responsible parent(s) has failed to provide support for the child, the county department shall without delay notify the designated representative who shall take appropriate action under this Article to provide that the parent(s) responsible supports the child.

Unlike the reimbursement claim, the State's action to establish current and future support in this case does involve the same cause of action as the tribal court proceeding. Thus, in order to determine whether the State may bring a support action in state court, we must apply the infringement test adopted in *Swayney* and examine (1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the reservation, and (3) the nature of the interests to be protected. 319 N.C. at 59, 352 S.E.2d at 417.

The first two parts of the infringement analysis yield the same result in this case as in *Swayney*. This case also involves a non-Indian plaintiff, the State, and an Indian defendant; and, although not clear from the record, Doris Smoker presumably applied for and received the AFDC benefits from the Department of Social Services on the reservation. The third factor, therefore, is the most significant portion of our analysis: weighing the State's interest in maintaining its AFDC program against the tribe's interest in self-governance.

JACKSON COUNTY EX REL. SMOKER v. SMOKER

[115 N.C. App. 400 (1994)]

We note that the State's interest in this case is the same as in *Swayney*: the maintenance of the AFDC program. In *Swayney*, the Court pointed out that as a condition of participating in the AFDC program, the state is required to operate a Child Support Enforcement Program to secure support for the child from the parents or other persons responsible for the child's support. 319 N.C. at 60, 352 S.E.2d at 418; 42 U.S.C. § 602(a)(27) (Cum. Supp. 1994). The program must be operated on a statewide basis. 319 N.C. at 60, 352 S.E.2d at 418; 45 C.F.R. 302.10(a) (1993). The *Swayney* Court questioned whether reliance upon tribal courts would satisfy this requirement, and noted that failure to comply with the requirements of the AFDC program could result in a loss of federal funding. 319 N.C. at 60, 352 S.E.2d at 418. Furthermore, the State points out that child support collections directly benefit the taxpayers by offsetting AFDC costs. *See* 42 U.S.C. § 657(b) (1991); 45 C.F.R. § 302.51(b) (1993).

The potential intrusion upon tribal sovereignty here, however, differs from that in *Swayney*. This situation is complicated by the prior tribal order regarding child support. Although it is clear that an initial assertion of jurisdiction in state court over child support cases involving Indian defendants does not infringe upon tribal sovereignty, the answer is not so clear when a child support order has previously been entered in the tribal court. Assertion of state court jurisdiction over an action for future support could potentially undermine the child support order entered in the tribal court.

Although there are no North Carolina cases directly on point, we find it instructive to compare the manner in which North Carolina courts treat child support orders entered in other states. Generally, one state may not directly modify a child support order entered in another state. *Thomas v. Thomas*, 248 N.C. 269, 103 S.E.2d 371 (1958). However, according to N.C.G.S. § 50-13.7(b) (1987), a court of this state may enter an order of child support either modifying or superseding an order from another state if two conditions are satisfied: (1) the North Carolina court must have subject matter and personal jurisdiction, and (2) there must be a showing of changed circumstances. *Morris v. Morris*, 91 N.C. App. 432, 371 S.E.2d 756 (1988). The statute itself gives the North Carolina courts subject matter jurisdiction to modify child support orders entered in another state. *Id.* at 434, 371 S.E.2d at 758. The existence of changed circumstances does not affect the initial determination of subject matter jurisdiction. According to *Morris*, if jurisdiction is obtained, but the showing of changed circumstances is inadequate, the North Carolina

court must give full faith and credit to the order from the other state. *Id.* We are only concerned with the issue of subject matter jurisdiction in the case at hand. *See Morris,* 91 N.C. App. at 758-59, 371 S.E.2d at 434 (Court only determined issue of subject matter jurisdiction and remanded to trial court for further proceedings). We note, however, that the receipt of public assistance after entry of an order for child support constitutes sufficient changed circumstances to justify modification of a child support order. *Cartrette v. Cartrette,* 73 N.C. App. 169, 170-71, 325 S.E.2d 671, 673 (1985).

[3] The fact that this State may modify child support orders entered in other states reveals that orders of child support are not viewed as permanent orders, but are continuing and transitory in nature. *See Williams v. Williams,* 91 N.C. App. 469, 372 S.E.2d 310 (1988). *See also Wilkes County ex rel. Nations v. Gentry,* 311 N.C. 580, 319 S.E.2d 224 (1984) (stating that Department of Social Services not bound by previous lump sum award because support is a continuing obligation). It is not considered an undue burden upon another state's sovereignty to allow assertion of jurisdiction over and modification of its child support orders. We find nothing which suggests that it would be an undue infringement upon tribal sovereignty to permit a state court to assert subject matter jurisdiction over the issue of child support where the issue previously had been litigated in tribal court, but without notice to the State.

A brief look at cases from several other jurisdictions leads us to the conclusion that there is no consensus regarding the issue of subject matter jurisdiction over tribal domestic matters. We note that some states have enacted statutes governing consideration of tribal matters, *see, e.g., State ex rel. Joseph v. Redwing,* 429 N.W.2d 49 (S.D. 1988) (citing South Dakota statute regarding recognition of tribal court orders in state court), *cert. denied,* 490 U.S. 1069, 104 L. Ed. 2d 636 (1989), and some states are subject to federal laws such as Public Law 280, a law which ceded to various states jurisdiction over named Indian tribes. *See Swayney,* 319 N.C. at 58 n.4, 352 S.E.2d at 417 n.4; *Becker County Welfare Dep't v. Bellcourt,* 453 N.W.2d 543 (Minn. Ct. App. 1990) (review denied 23 May 1990). Although North Carolina is not subject to any similar state statutes or federal laws, we find it instructive to look briefly at those cases addressing the issue of jurisdiction between the state and tribal courts, because they often raise the same concerns involved here.

Cases concluding that a state court had subject matter jurisdiction include *Harris v. Young*, 473 N.W.2d 141 (S.D. 1991), in which the South Dakota Supreme Court concluded that the tribal and state courts had concurrent jurisdiction over a non-Indian's petition to modify a child custody decree, entered in another state, based on a change of circumstances which occurred on the reservation, where the Indian mother and child resided. *See also Redwing*, 429 N.W.2d at 51 (determining that the state court had subject matter jurisdiction over the issue of child support where both parents were Indians and where previous orders had been entered in tribal court, because minor has an "inherent right" to support from her parents, a right which existed at common law and which is separate from any statutory obligation); *First v. State ex rel. LaRoche*, 808 P.2d 467, 471 (Mont. 1991) (applying infringement analysis, determined that state tribunals have subject matter jurisdiction over the state's action to enforce a child support order, emphasizing AFDC program and its importance); *County of Inyo v. Jeff*, 277 Cal. Rptr. 841 (Cal. Ct. App. 1991) (review denied 18 April 1991) (concluding that state court had subject matter jurisdiction over child support matter even though both the defendant-mother and custodian-grandmother were Indians).

On the other hand, several states have concluded that their state courts do not have jurisdiction over tribal domestic matters. In *Byzewski v. Byzewski*, 429 N.W.2d 394 (N.D. 1988), the Indian mother and non-Indian father lived on the reservation. They separated, and obtained several temporary orders, one of which concerned custody, from the tribal court. The father then left the reservation and filed for a divorce in state court, which entered several orders, while the mother filed for divorce in the tribal court, which also entered several orders. The mother appealed from the state court orders, asserting that the state court had no jurisdiction because the tribal court had entered first-in-time temporary orders, and that the exercise of state court jurisdiction would unduly infringe upon tribal sovereignty. The North Dakota Supreme Court agreed, noting that domestic relations were an area of "traditional tribal control." *Id.* at 399.

*Byzewski* is distinguishable from the case at hand, because it involved neither the state nor the AFDC program. In this case, the State is a party and has a significant interest to protect: maintenance of the AFDC program. *Cf. State ex rel. Flammond v. Flammond*, 621 P.2d 471 (Mont. 1980) (refusing to exercise jurisdiction over URESA proceeding initiated by nonmember spouse residing out of state

against member spouse residing on reservation, because no off-reservation acts in Montana); *Malaterre v. Malaterre*, 293 N.W.2d 139 (N.D. 1980) (refusing to exercise jurisdiction over action to modify state court custody decree where custodial spouse and child had subsequently established residence on reservation). *See generally American Indian Law Deskbook*, Conf. of W. Att'ys Gen. (Nicholas J. Spaeth et al. eds., 1993); Margaret Campbell Haynes and June L. Melvin, *Tribal and State Court Reciprocity in the Establishment and Enforcement of Child Support*, A.B.A. Center for Children & the Law (1991).

## IV.

We conclude that, in the case at hand, it would not unduly infringe upon tribal sovereignty if the state court were permitted to exercise subject matter jurisdiction over the issue of child support, where that issue had been litigated previously in the tribal court without notice to the State. Although the existence of the tribal court support order renders the assertion of state court jurisdiction in this case more intrusive upon tribal sovereignty than in *Swayney*, we find that the importance of the AFDC program outweighs the potential infringement. The State's interest in maintaining the AFDC program is significant, and the ability to institute actions establishing support is an important part of that program. The members of the tribe and others residing on the reservation benefit from the AFDC program in the same manner as other citizens of the state. Since they receive the benefits of the program, and certainly are interested in its continuation, we do not find undue infringement upon tribal sovereignty in permitting the state court to exercise subject matter jurisdiction over the issue of child support. *See First v. State ex rel. LaRoche*, 808 P.2d 467, 471 (Mont. 1991) (stating that "[b]esides the possible financial sanctions against Montana, if Montana's tribunals were not allowed to utilize income withholding proceedings against off-reservation income payable to absent Indian parents, Montana's recovery of AFDC benefits provided to children whose absent parents are Indian would be negatively affected").

Moreover, orders of child support are typically non-permanent and transitory in nature, and states often modify orders initially rendered in another state. We do not believe that treating the Cherokee tribal court as we would the courts of Virginia, Georgia, Tennessee or South Carolina would rise to the level of undue infringement in cases

**JACKSON COUNTY** EX REL. **SMOKER** v. **SMOKER**

[115 N.C. App. 400 (1994)]

involving child support and the State's interest in maintaining the AFDC program.

Our holding does not alter the general rule from *Swayney* that the state and tribal courts possess concurrent jurisdiction over the issues involved. The State may proceed in tribal court, as before, on issues of reimbursement and the establishment of child support. We only hold that under the facts of this case, assertion of subject matter jurisdiction would not unduly infringe upon tribal sovereignty.

We note that we are only presented with the narrow issue of subject matter jurisdiction. We are not asked to determine the issue of the treatment of the tribal court order in state court or what effect the tribal court order may have upon the state court proceeding. However, we note that tribal court orders may be entitled to comity or full faith and credit in state courts. *See generally Gordon K. Wright, Recognition of Tribal Decisions in State Courts*, Note, 37 Stan. L. Rev. 1397 (1985); *American Indian Law Deskbook* at 148 n.137 (listing various law review articles on this topic). We also note that there are choice of law issues which may arise in the state court. *See American Indian Law Deskbook* at 141 n.106 (listing cases addressing choice of law issues).

We conclude that the state district court has subject matter jurisdiction over the State's action for reimbursement, because that issue was not addressed in the tribal court. We further conclude that the state court has subject matter jurisdiction over the State's action for the establishment of child support and that this assertion of jurisdiction does not unduly infringe upon tribal sovereignty. We therefore reverse the dismissal of this case and remand to the Jackson County District Court for further proceedings.

Reversed and remanded.

Judges ORR and JOHN concur.